## THE ROBERT EMMET AND SON OIL AND SUPPLY COMPANY *v.* JOHN L. SULLIVAN, TAX COMMISSIONER

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued April 3—decided May 6, 1969

*Alex Lloyd,* with whom, on the brief, was *Russell L. Post, Jr.,* for the plaintiff.

*Richard A. Gitlin,* assistant attorney general, with whom, on the brief, were *Robert K. Killian,* attorney general, and *Ralph G. Murphy,* assistant attorney general, for the defendant.

HOUSE, J. This case comes before us by reservation from the Superior Court. The parties stipulated to the facts giving rise to the controversy, and these may be briefly summarized. The plaintiff, a Connecticut corporation having its principal place of business in Stonington, is appealing from a determination made by the defendant tax commissioner as to its tax liability. In January, 1968, the plaintiff purchased for use in Connecticut a new automobile from The John Ahr Ford Company, hereinafter referred to as the seller. The seller is a licensed Rhode Island motor vehicle dealer with a principal place of business in Westerly, Rhode Island, and has no place of business in Connecticut. The listed purchase price of the automobile was $4100. In part payment, the plaintiff traded in a 1967 automobile, receiving a trade-in allowance therefor of $2740, leaving a net cash price paid of $1360. No sales or use tax was paid to the state of Rhode Island, which exempts from taxation the purchase of an automobile by a nonresident where the car is not registered in that state. Had plaintiff paid a sales or use tax to Rhode Island upon the purchase or use of this automobile, it would have received credit for the amount so paid toward the subsequent use tax liability in Connecticut. A few days after purchasing the car, the plaintiff registered it at the New London office of the Connecticut state motor vehicle department. As

a condition precedent to that registration, it was required to, and did, pay to the state of Connecticut a tax on the purchase equal to 3.5 percent of the $4100 sales price for a total tax of $143.50 as imposed by chapter 219 (§§ 12-406—12-432a) of the Connecticut General Statutes. Had the plaintiff purchased the automobile from a motor vehicle dealer licensed under the provisions of subdivision (D) of part III of chapter 246 (§§ 14-51—14-65a) of the General Statutes, the 3.5 percent tax payable would have been computed on the basis of the net cash price of $1360, there being provision for credit against the total sales price for the value of the trade-in allowance under § 12-430 (4) of the General Statutes when the purchase is from such a dealer. In those circumstances, the tax payable would have been $47.60. All Connecticut motor vehicle dealers must be licensed under the provisions of subdivision (D) of part III of chapter 246 of the General Statutes, but no out-of-state dealer can be licensed under those provisions. The plaintiff paid, under protest, the $95.90 portion of the tax attributable to the amount allowed by the seller for the trade-in vehicle. It then, by written petition to the state tax commissioner, claimed a refund of the $95.90 paid under protest and requested and was given a hearing on its claim as provided by statute. See General Statutes § 12-421. From the disallowance of its claim for a refund, the plaintiff appealed to the Superior Court. See General Statutes § 12-422. The reservation from that court seeks the answers to three questions.[1]

As the stipulated facts disclose, therefore, under

---

[1] "The questions upon which the advice of the Supreme Court is desired are as follows:

"(a) Does Sec. 12-430 (4) of the Connecticut General Statutes, Revision of 1958 by treating in-state and out-of-state motor vehicle purchases differently, unreasonably discriminate and impose an undue

the Connecticut statutes, a resident who purchases a motor vehicle for use in this state and as part payment of the purchase price trades in another automobile is required to pay a greater tax if he purchases the motor vehicle from an out-of-state dealer than he would be required to pay if he made a purchase on the same terms from a dealer within the state. This has been so since 1961.

As originally enacted in 1947, the sales and use tax act contained no provision that in the event of a trade-in of a motor vehicle the tax should apply only on the difference between the sale price of the motor vehicle and the amount allowed on the trade-in. Public Acts 1947, No. 228; Sup. 1947, c. 78a. At a special session of the General Assembly in 1948, the act was amended to provide that "[w]here a trade-in of a motor vehicle is received by a retailer holding a valid seller's permit, upon the sale of another motor vehicle to a consumer, the tax is only on the difference between the sale price of the motor vehicle purchased and the amount allowed on the motor vehicle traded in on such purchase." Public Acts, Spec. Sess., Feb. 1948, No. 1 § 17 (Rev. 1949, § 2114 [5]). In 1951 the act was amended to give the same favorable tax treatment in the event of a trade-in of a farm tractor and also to delete the word "retailer" and substitute "licensed motor vehicle dealer." Public Acts 1951, Nos. 164, 305 (Cum.

burden on interstate commerce so as to violate Article I, Section 8, of the United States Constitution?

"(b) Does said Sec. 12-430 (4) deny to the purchaser of a motor vehicle from a non-Connecticut dealer for use in Connecticut the equal protection of the laws so as to violate Art. I, Section 20, of the Constitution of the State of Connecticut or the Fourteenth Amendment of the United States Constitution?

"(c) If the answer to either a or b is affirmative, is the Appellant entitled to a refund equal to the amount of use tax paid on the value of the trade-in vehicle?"

Sup. 1955, § 1176d). In 1961 the act was again amended (Public Acts 1961, No. 399) to read as it now does in § 12-430 (4) of the General Statutes (Rev. to 1964) and thus exempt from the tax the amount allowed on the motor vehicle traded in where the trade-in is received by a motor vehicle dealer "licensed under the provisions of subdivision (D) of part III of chapter 246 and holding a valid seller's permit." As the parties have stipulated that no out-of-state dealer can be licensed under the provisions of subdivision (D) of part III of chapter 246 of the General Statutes, the result of the 1961 amendment is that, if a purchaser trading in a motor vehicle as part payment for another car to be used in this state buys from a Connecticut dealer, he is liable for a tax only on the difference between the trade-in allowance and the full purchase price, whereas if he makes the same transaction with a seller in another state he is liable for a tax on the full purchase price without credit for the trade-in allowance.[2]

The sales tax (General Statutes § 12-408) imposed on purchases made in Connecticut and the use tax (General Statutes § 12-411) imposed on the use in Connecticut of goods purchased out of the state are complementary to one another and as first enacted and before the 1961 amendment had the purpose of taxing Connecticut purchasers equally whether they did their purchasing within or without the state.

---

[2] It is of interest to note that, at the public hearing held by the General Assembly's joint standing committee on finance on this 1961 amendment, the director of the tax research division of the state tax department appeared and informed the committee that the "idea" of imposing a greater burden on the purchaser of an automobile "because that purchaser buys the car in interstate commerce is probably an unconstitutional idea . . . , so whether you enact this legislation or not, I am of the opinion that it is still unconstitutional and someone will test it out some day." Hearings before Joint Standing Committee on Finance, 1961 Sess., Pt. 1, p. 239, on H.B. 2355.

*Avco Mfg. Corporation* v. *Connelly,* 145 Conn. 161, 172, 140 A.2d 479; *United Aircraft Corporation* v. *O'Connor,* 141 Conn. 530, 536, 107 A.2d 398; *Connecticut Light & Power Co.* v. *Walsh,* 134 Conn. 295, 299, 57 A.2d 128. In both intrastate and interstate transactions, the ultimate burden of the sales tax and the use tax falls on the purchaser. *Avco Mfg. Corporation* v. *Connelly,* supra, 171; see also *Kern-Limerick, Inc.* v. *Scurlock,* 347 U.S. 110, 74 S. Ct. 403, 98 L. Ed. 546; *Alabama* v. *King & Boozer,* 314 U.S. 1, 62 S. Ct. 43, 86 L. Ed. 3. The greater tax levied on out-of-state motor vehicle purchases since 1961 as a result of the enactment of § 12-430 (4) provides a direct financial incentive to intrastate rather than interstate purchases. It has been stipulated that in the present case that tax differential amounts to $95.90, and it is the claim of the plaintiff that this discrimination in favor of intrastate transactions is unconstitutional because it violates the provisions of article I, § 8, clause 3, of the United States constitution, which grants to congress the power to regulate commerce among the several states.

The problem of trade-in deductions is not a new one. See comment, "The Trade-in Deduction: Discrimination under the Sales and Use Taxes," 37 N.Y.U. L. Rev. 306.

"[I]t must be regarded as settled that no State can, consistently with the Federal Constitution, impose upon the products of other States, brought therein for sale or use, or upon citizens because engaged in the sale therein, or the transportation thereto, of the products of other States, more onerous public burdens or taxes than it imposes upon the like products of its own territory." *Guy* v. *Baltimore,* 100 U.S. 434, 439, 25 L. Ed. 743. A state statute which is discriminatory, "operating to

the disadvantage of the products of other States when introduced into the first mentioned State, is, in effect, a regulation in restraint of commerce among the States, and as such is a usurpation of the power conferred by the Constitution upon the Congress of the United States." *Walling* v. *Michigan,* 116 U.S. 446, 455, 6 S. Ct. 454, 29 L. Ed. 691. A state may not, through the guise of taxation or otherwise, prohibit or unduly impede the flow of products from other states. See *H. P. Hood & Sons, Inc.* v. *Du Mond,* 336 U.S. 525, 69 S. Ct. 657, 93 L. Ed. 865; *Nippert* v. *Richmond,* 327 U.S. 416, 66 S. Ct. 586, 90 L. Ed. 760; *Baldwin* v. *G. A. F. Sellig, Inc.,* 294 U.S. 511, 55 S. Ct. 497, 79 L. Ed. 1032; *Brown* v. *Maryland,* 25 U.S. (12 Wheat.) 419, 6 L. Ed. 678. "Forms of state taxation whose tendency is to prohibit the commerce or place it at a disadvantage as compared or in competition with intrastate commerce, and any state tax which discriminates against the commerce, are familiar examples of the exercise of state taxing power in an unconstitutional manner, because of its obvious regulatory effect upon commerce between the states." *McGoldrick* v. *Berwind-White Coal Mining Co.,* 309 U.S. 33, 45, 60 S. Ct. 388, 84 L. Ed. 565; see also *Memphis Steam Laundry Cleaner, Inc.* v. *Stone,* 342 U.S. 389, 72 S. Ct. 424, 96 L. Ed. 436; *Breard* v. *Alexandria,* 341 U.S. 622, 71 S. Ct. 920, 95 L. Ed. 1233; 15 Am. Jur. 2d, Commerce, § 18; notes, 153 A.L.R. 609, 129 A.L.R. 222.

The constitutional test of any tax incident to interstate sales is whether there is any discrimination in the tax treatment by the taxing state against such transactions in favor of intrastate transactions. Use taxes and other compensating taxes incident to interstate sales have, accordingly, been held valid only upon a showing of equality of tax treatment by the

taxing state of the interstate and intrastate transaction. *Halliburton Oil Well Cementing Co.* v. *Reily,* 373 U.S. 64, 83 S. Ct. 1201, 10 L. Ed. 2d 202, rehearing denied, 374 U.S. 858, 83 S. Ct. 1861, 10 L. Ed. 2d 1082; *Henneford* v. *Silas Mason Co.,* 300 U.S. 577, 57 S. Ct. 524, 81 L. Ed. 814. The majority opinion in the *Halliburton* case stated the principle thusly (p. 70) : "The conclusion is inescapable: equal treatment for in-state and out-of-state taxpayers similarly situated is the condition precedent for a valid use tax on goods imported from out-of-state," and (p. 73) "we see no reason to depart from the strict rule of equality adopted in [*Henneford* v.] *Silas Mason,*" supra. Justice Brennan, concurring in the decision of the *Halliburton* case, stated (p. 77) : "[I]f the Constitution does not mandate absolute equality of treatment as between in-state and out-of-state sales, it assuredly does forbid discriminatory treatment by the States. Discrimination would result if different rates of taxation were imposed by the State on use and sale."

Although both parties agree that the decision in the *Halliburton* case is controlling, the defendant takes comfort in a further statement in that opinion that the proper comparison is the effect on local taxpayers involved in similar in-state and out-of-state commercial situations and (p. 71) "if this comparison discloses discriminatory effects, it could only be ignored after a showing of adequate justification." The defendant asserts that this statement "suggests that once a different tax treatment is found, the burden is thrust upon the state to justify its scheme of taxation. We accept that burden, and respectfully submit that the State of Connecticut clearly has adequate justification for the taxing scheme here in issue before this court." As "ade-

quate justification" the defendant asserts two theories. The first is that the basic reason for granting a trade-in credit only if the purchase is made in Connecticut is to avoid double taxation of the traded-in automobile in Connecticut since "[t]he Legislature recognized the likelihood that the traded-in vehicle in Connecticut would be subsequently sold by the car dealer in the state and a sales tax would be paid at the time." The second is that "the state incurs additional expenses in collecting the use tax" because in the case of motor vehicles the user pays the tax to the motor vehicle department, which then forwards the records to the tax department, and by granting no credit for a trade-in out of state, Connecticut recoups some of the increased expenses incurred in the administration of the tax with respect to automobiles.

The simple answer to these claims is that there is nothing in the stipulation of facts which gives any factual support to either contention. Even if we assume such factual support, neither the language of the earlier opinions of the United States Supreme Court dealing with state taxation as an unconstitutional regulation of interstate commerce, many of which cases we have already noted, nor the *Halliburton* opinion as a whole supports the defendant's contention. The distinct emphasis is on equality in the tax burden. In the light of these decisions and the rationale of the *Halliburton* case with its injunction that (p. 69) "a proper analysis must take 'the whole scheme of taxation into account,'" we are led to the conclusion that a "showing of adequate justification" refers to the necessity of showing that the apparent discrimination is in actual effect justified since it produces equality of tax burden when considered in the light of the whole tax scheme of the state. See

also *Nelson* v. *Sears, Roebuck & Co.,* 312 U.S. 359, 364, 61 S. Ct. 586, 85 L. Ed. 888, rehearing denied, 312 U.S. 715, 61 S. Ct. 803, 85 L. Ed. 1145; *Gregg Dyeing Co.* v. *Query,* 286 U.S. 472, 52 S. Ct. 631, 76 L. Ed. 1232; *Interstate Busses Corporation* v. *Blodgett,* 276 U.S. 245, 48 S. Ct. 230, 72 L. Ed. 551; *General American Tank Car Corporation* v. *Day,* 270 U.S. 367, 46 S. Ct. 234, 70 L. Ed. 635; *Travellers' Ins. Co.* v. *Connecticut,* 185 U.S. 364, 22 S. Ct. 673, 46 L. Ed. 749.

"The commerce clause forbids discrimination, whether forthright or ingenious." *Best & Co.* v. *Maxwell,* 311 U.S. 454, 455, 61 S. Ct. 334, 85 L. Ed. 275. We conclude that on the facts as stipulated by the parties the statutory provision under attack does in its practical operation in the case of this plaintiff work discrimination against interstate commerce and, accordingly, violates article I, § 8, clause 3, of the United States constitution.

Section 12-422 of the General Statutes, pursuant to which the plaintiff brought this action in the Superior Court, expressly provides that that court "may grant such relief as may be equitable and, if such tax has been paid prior to the granting of such relief, may order the treasurer to pay the amount of such relief, with interest at the rate of six per cent per annum, to the aggrieved taxpayer." Since the plaintiff has paid, under protest, a tax which it is concluded is an unconstitutional levy, the court in the exercise of this express authorization may properly enter an order for a refund equal to the amount of the use tax paid on the value of the trade-in vehicle with interest as provided by this statute.

The first question reserved for our advice is phrased in general terms. Limiting our answer to the factual situation stipulated by the parties, to the

first question, we answer "Yes"; in view of our answer to the first question, it is unnecessary to answer the second question; our answer to the third question is that on the facts as stipulated the court may, in the exercise of the statutory power granted by § 12-422 of the General Statutes, order a refund to the plaintiff of the unconstitutional tax paid with interest.

No costs will be taxed in this court in favor of either party.

In this opinion the other judges concurred.