161 Ariz. 514 (1989)
779 P.2d 829
PEOPLE OF FAITH INC.
v.
ARIZONA DEPARTMENT OF REVENUE.
No. TX 89-00001.
Tax Court of Arizona.
September 1, 1989.
*515 Ryley, Carlock & Applewhite, P.A. by Mark V. Scheehle, Phoenix, for plaintiff.
Atty. Gen. by J. Scott Halverson, Phoenix, for defendant.
OPINION
MORONEY, Judge.
The Court has had under advisement the first motion for partial summary judgment filed by the plaintiff taxpayer and the cross-motion for summary judgment of the defendant, Arizona Department of Revenue.
IT IS ORDERED denying the plaintiff's first motion for partial summary judgment.
IT IS FURTHER ORDERED granting partial summary judgment to the defendant.
The sole issue presented to the Court is whether Arizona's Use Tax may apply to tangible personal property purchased within the state.
The Court holds that it may.
The taxpayer is an eleemosynary organization which constructed, and now operates, the Royal Oaks Life Care Center in Sun City, Arizona. Royal Oaks Life Care Center, hereinafter referred to as "Royal Oaks", consists of a 100 bed licensed nursing care facility, a 249 unit residential complex, and 100 garden homes. The relevant time period is from December 1, 1982, through June 30, 1986, during which time Royal Oaks was constructed.
As a licensed nursing care institution, the plaintiff has a sales tax exemption, presumably pursuant to Ariz.R. & Regs. R15-5-1821. It is the position of the Department that the taxpayer was entitled to purchase, in transactions exempt from transaction privilege taxes (sales taxes), personal property within the state for use in the construction of that portion of Royal Oaks which is the 100 bed nursing care facility. However, it is further the position of the Department that the taxpayer was not entitled to make such tax free purchases for personal property used in the construction of the part of Royal Oaks which is not a nursing care facility.
The taxpayer employed Mardian Construction Company as its contractor to *516 build Royal Oaks. Mardian used the taxpayer's exemption, and purchased, in tax free transactions, property which it incorporated in the construction of all of Royal Oaks, not just the nursing care facility.
The Department now seeks to impose a use tax on the property purchased in sales tax exempt transactions within the state but not used in the construction of the nursing care facility. The taxpayer has argued that the use tax cannot apply to property purchased within the state. The taxpayer's motion for partial summary judgment and the Department's cross-motion are intended to have the Court resolve this issue. The taxpayer does not concede that any of the purchases made in its behalf by Mardian should have been subject to sales tax. This question, however, is not within the scope of the motions under consideration.
The use tax is imposed by article 2, chapter 8, title 42, of the Arizona Revised Statutes. The relevant statutes have remained unchanged since the tax year at issue. A.R.S. § 42-1408 provides for the levy of the tax. It reads as follows:
There is levied and imposed an excise tax on the storage, use or consumption in this state of tangible personal property purchased from a retailer as a percentage of the sales price. The rate of taxation shall be equal to the rate of taxation for retail transactions imposed by article 1 of this chapter for the same type of transaction or business activity. Every person storing, using or otherwise consuming in this state tangible personal property purchased from a retailer is liable for the tax. Such person's liability is not extinguished until the tax has been paid to this state, except that a receipt from a retailer maintaining a place of business in this state or from a retailer who is authorized by the department to collect the tax, under such rules and regulations as it may prescribe, and who is for the purposes of this article regarded as a retailer maintaining a place of business in this state, given to the purchaser in accordance with the provisions of § 42-1411 is sufficient to relieve the purchaser from further liability for the tax to which the receipt refers. (footnote omitted)
The taxpayer agrees that there is nothing in the language of A.R.S. § 42-1408 which suggests that its application is limited to out-of-state transactions.
A.R.S. § 42-1409 provides a list of exemptions to the application of the use tax. A.R.S. § 42-1409(A)(1) exempts "tangible personal property sold in this state, the gross receipts from the sale of which are included in the measure of the tax imposed by article 1 of this chapter." Article 1 imposes the transaction privilege tax.
It is the position of the taxpayer that A.R.S. § 42-1409(A)(1) exempts from use tax any property the retail sale of which in this state should have been subject to a transaction privilege tax. It is the position of the Department that A.R.S. § 42-1409(A)(1) exempts only that property the retail sale of which was, in fact, subjected to a transaction privilege tax.
The solution to this conundrum turns upon an interpretation of the clause "included in the measure of the tax imposed by article 1."
The taxpayer argues that the only interpretation which makes the statute conform to the constitution is one which exempts from the use tax all personal property sold at retail within the state.
The taxpayer points to four types of sales transactions which are exempt from sales tax, but for which there are no specific exemptions from use tax. These are sales of prescription drugs, sales of required college textbooks, sales of magazines by the state which encourage tourist travel, and sales by charitable organizations. The taxpayer argues that, to interpret A.R.S. § 42-1409(A)(1) as the Department wants to interpret it, would nullify the sales tax exemptions granted by the legislature in the four situations enumerated.
The taxpayer also makes much of an argument that the application of the use tax to in-state purchases now urged by the Department is directly contrary to what the *517 Department's own regulations reflect. It is also different from what the Department implies to the taxpaying public in the instructions and guides which it provides to taxpayers.
The taxpayer also argues that to interpret the use tax statute to apply to in-state purchases would allow the Department to embark upon a discriminatory policy of selective enforcement, sometimes collecting unpaid sales taxes from sellers as delinquent sales taxes due, and sometimes from buyers as a use tax.
Tradition, at least, is in the camp of the taxpayer. Use taxes, sometimes otherwise labelled, came into being to inhibit buyers from avoiding sales taxes by making purchases out-of-state of goods which were to be used within the state. Bank of America v. State Board of Equalization, 209 Cal. App.2d 780, 26 Cal. Rptr. 348 (1962); Southwestern Bell Telephone v. State Commission of Revenue, 168 Kan. 227, 212 P.2d 363 (1949); Brandtjen & Kluge v. Fincher, 44 Cal. App.2d Supp. 939, 111 P.2d 979 (1941). The difference between sales and use taxes is sometimes defined by describing sales taxes as being imposed on transactions within a state, and use taxes as being imposed on transactions consummated out-of-state. Sullivan v. United States, 395 U.S. 169, 89 S.Ct. 1648, 23 L.Ed.2d 182 (1969); Halliburton Oil Well Co. v. Reily, 373 U.S. 64, 83 S.Ct. 1201, 10 L.Ed.2d 202 (1963), reh'g denied 374 U.S. 858, 83 S.Ct. 1861, 10 L.Ed.2d 1082; Avco Mfg. Corp. v. Connelly, 145 Conn. 161, 140 A.2d 479 (1958).
Typically, sales taxes and use taxes are complementary. Wallace Berrie & Co. v. State Bd. of Equal., 40 Cal.3d 60, 219 Cal. Rptr. 142, 707 P.2d 204 (1985). Both taxes start with a retail sale. The sales tax is a transaction tax on the sale. It is imposed upon the seller but ordinarily is passed through to the buyer. The use tax is a tax on the privilege of using the purchased property within the state and is imposed on the buyer. Both taxes are computed by multiplying the sale price by the tax rate. To be truly complementary, both taxes should be at the same rate. If the sale was subject to sales tax, the buyer is exempt from use tax. Robert Emmet and Son Oil and Supply Co. v. Sullivan, 158 Conn. 234, 259 A.2d 636, 45 A.L.R.3d 1261 (1969); Colonial Pipeline Co. v. Clayton, 275 N.C. 215, 166 S.E.2d 671 (1969); United States Gypsum Co. v. Green, 110 So.2d 409 (Fla. 1959).
If the foregoing scheme works as it is designed to work, the buyer (the real payer of the sales tax, whether passed through or not), pays one tax or the other on retail purchases, regardless of where the purchase is made. If all retail sales within a state are subject to a sales tax, then, because the buyer is exempt from use taxes on such sales, use taxes can only be imposed on the use of property purchased outside the state.
A review of the Use Tax regulations promulgated by the Arizona Department of Revenue (Ariz. Comp. Admin. R. & Regs. R15-5-2301 et seq.) makes it clear that, at least at one time, the Department was of the view that the Arizona Use Tax applied only to property purchased out of state.
The taxpayer argues that the regulations now in force demonstrate that the Department interprets the statute to exempt retail sales within the state from use tax, and the court should be persuaded by that interpretation. The Department argues that, although it may once have been of the view which the taxpayer ascribes to it, the exemption statute has been amended. As a result, the Department now interprets the statute to apply to sales within the state.[1]
The amendment to which the Department points took place in 1981. Prior to being amended, A.R.S. § 42-1409(A)(1) exempted from the applicability of the use tax, "tangible personal property sold in this state, the gross receipts from the sale of which are required to be included in the *518 measure of the tax imposed by article 1 of this chapter."
Article 1 imposes the sales tax. The amendment deleted the words, "required to be," so that the statute read at the relevant time as it reads today. Prior to the amendment, it was the opinion of the Department that the exemption eliminated from the application of the use tax all property purchased within the state.
The taxpayer argues vigorously that the amendment neither adds nor detracts anything to or from the issue before the Court. It is the position of the taxpayer that the court must, today, interpret A.R.S. § 42-1409(A)(1) as the Department did before the amendment, because, to do otherwise, would be to expose certain non taxable purchases to abuse by the Department.
When a statute is amended, the court must presume that the legislature intends a change in existing law. The Court should interpret the amended statute to give effect to the amendment. Brown v. White, 2 Ariz. App. 295, 408 P.2d 228 (1965); Beach v. Superior Court, 64 Ariz. 375, 173 P.2d 79 (1946).
The bill which amended the exemption statute was Senate Bill 1103. 1981 Ariz. Sess. Laws 301. In determining the legislative purpose in passing the 1981 amendment, the minutes of the Senate Committee on Finance for February 9, 1981, are helpful.[2] The minutes reflect that the Senate Committee on Finance on February 9, 1981, voted to recommend to the full Senate that the amendment to the Use Tax proposed by the Department be enacted into law. The minutes also indicate that the reason that the Department sought the amendment was to bring within the scope of the Use Tax property which had been purchased at retail under a "purchased for resale" exemption, but which was not resold.
In concept, the Arizona Use Tax does not vary much from the stereotypical tax scheme described above. Undoubtedly, the use tax came into being in Arizona to inhibit buyers from making purchases out-of-state to avoid the Arizona sales tax. An analysis of chapter 8, title 42, of the Arizona Revised Statutes, the chapter in which both sales and use tax legislation is found, forces the conclusion that the statutory scheme set in place by chapter 8 intended that the Arizona Sales and Use Taxes be complementary taxes. A tax, but only one tax, is to be paid on every non-exempt retail transaction, if the property purchased is to be used in Arizona.
In Arizona, the sales tax is not a sales tax. That is, it is not a tax on sales. As the Supreme Court said in Industrial Uranium Co. v. State Tax Com'n, 95 Ariz. 130, 132, 387 P.2d 1013 (1963):
We have stated the nature of this tax repeatedly. It is not a tax upon sales. It is purely an excise tax upon the privilege or right to engage in business in Arizona measured by the gross volume of business conducted within the state. *519 The legal incidence of the tax falls on the seller. The taxable event is the engaging in ... business .. . in Arizona. (citation omitted)
This is an important distinction. See Industrial Uranium Co. v. State Tax Com'n, supra; Arizona St. Tax Com'n v. Garrett Corporation, 79 Ariz. 389, 291 P.2d 208 (1955); Arizona St. Tax Com'n v. Ensign, 75 Ariz. 220, 254 P.2d 1029 (1953), reh'g denied, 75 Ariz. 376, 257 P.2d 392 (1953). In many respects, however, the Arizona Transaction Privilege Tax is much like a sales tax. The Department, itself, refers to the Transaction Privilege Tax as a sales tax. Regulations which pertain to the Transaction Privilege Tax are in a chapter of the Arizona Administrative Code established by the Department as the "Sales and Use Tax Section." The Court notes that the Transaction Privilege Tax is commonly referred to within the state as the sales tax. The Court so refers to it in this opinion.
Most importantly, the Court holds that, like a true sales tax, the Transaction Privilege Tax and the Use Tax are complementary taxes. The Transaction Privilege Tax is measured by the gross receipts of non-exempt transactions.
Although the tax is imposed on the seller, it may, but need not, be passed on to the buyer. Ariz. Comp. Admin. R. & Regs. R15-5-209. Since the tax can be exactly computed on the basis of each taxable transaction, and is a fixed cost which the seller cannot control, the tax is almost always passed on to the buyer. This reality of the marketplace is recognized by the legislature. See A.R.S. § 43-1043(B).[3] Passed on or not, however, the buyer pays the tax.
Every sale in Arizona, however, is not subject to sales tax. There is no tax on sales of property which is purchased to be resold. As is the situation in this case, sales made to an operator of a nursing care institution, although made at retail, are also exempt from sales tax. In both the foregoing circumstances, once the buyer identifies himself as one entitled to make purchases in nontaxable transactions, the buyer controls whether the seller treats the sale as one on which a tax is due. A.R.S. § 42-1328. Ariz. Comp. Admin. R. & Regs. R15-5-1181 and R15-5-2320. If such a buyer deliberately, negligently, or inadvertently, misrepresents to a seller that a sale is tax exempt, the seller loses the opportunity to pass the burden of the tax on to the buyer. The seller can, in good conscience, deduct the sale price from gross receipts in computing sales tax liability, and the sales tax which should have been paid to the state escapes. In addition to sales for resale and purchases by charities, similar opportunities for tax avoidance likely exist elsewhere.
At issue here, is whether the legislature intended, after amending the exemption statute, to exempt from use tax all property purchased within the state. In attempting to ascertain the intent of the legislature, the Court begins by examining the language of the statute itself. City of Show Low v. Owens, 127 Ariz. 266, 619 P.2d 1043 (App. 1980). As the taxpayer has conceded, there is nothing in A.R.S. § 42-1408 which would indicate that the legislature consciously intended to exempt in-state sales. If the legislature intended, *520 by enactment of A.R.S. § 42-1409(A)(1), or by amendment to it, to exempt all property purchased in in-state sales, then the modifying clause is redundant, and adds nothing to the statute but confusion. A statute should be interpreted so that no sentence, clause, or word is rendered insignificant. Prairie State Bank v. I.R.S., 155 Ariz. 219, 745 P.2d 966 (App. 1987); Continental Bank v. Ariz. Dept. of Revenue, 131 Ariz. 6, 638 P.2d 228 (App. 1981).
Tax exemption statutes are to be strictly construed in Arizona. Tax exemptions, to exist under a statute, must be granted in unequivocal terms. Kunes v. Mesa Stake of Church of Jesus Christ, Etc., 17 Ariz. App. 451, 498 P.2d 525 (1972); City of Phoenix v. Bowles, 65 Ariz. 315, 180 P.2d 222 (1947); Weller v. City of Phoenix, 39 Ariz. 148, 4 P.2d 665 (1931).
The Court does not construe A.R.S. § 42-1409(A)(1) as the taxpayer urges. The Court holds that the legislature, when it enacted the use tax, intended to impose an excise tax on retail sales which, but for some act on the part of the buyer, would have been subject to sales tax. At the time the Act was passed, the most prevalent scheme to avoid state sales taxes was to make purchases out-of-state, and thereafter bring the property into the state for its intended use. Even so, the language of the act, before the 1981 amendment, did not specifically exclude property purchased within the state from application of the use tax. If such property was to have been universally excluded, as the Department appears to have believed, it was because of a strangely worded exemption.
Whatever the law before the 1981 amendment, the issue before the court is whether A.R.S. § 42-1409(A)(1) as amended exempts all property purchased in-state from the application of the use tax. The Court holds that it does not. The Court further holds that the measure of the Transaction Privilege Tax, as that language is set forth in A.R.S. § 42-1409(A)(1), means those sales on the gross receipts of which the seller is obligated by article 1 to pay a tax; except those sales which, because of some act on the part of the buyer, the seller reasonably believes, at the time of sale, are exempt from the application of the tax imposed by article 1. A use tax may be imposed with respect to property purchased in a retail sale in the state which sale should have been subject to sales tax, if the sale price is not included within the measure of the sales tax, as that language is defined herein.
In interpreting a statute, the Court must attempt to ascertain what the legislature intended to set in place when it passed the statute. In doing so, the Court may look to the policy behind the legislative enactment and the evil which it was designed to remedy. Calvert v. Farmers Ins. Co. of Arizona, 144 Ariz. 291, 697 P.2d 684 (1985). The use tax itself was intended to negate the effect of acts by buyers to avoid the transaction privilege tax. This courts interpretation of A.R.S. § 42-1409(A)(1), as reflected in this opinion, is consistent with that intent. The Court sees no logical barrier at the state line which should frustrate a legislative desire to effectively impose a transaction tax on certain sales at retail.
While all states may not apply the use tax with respect to property purchased within its borders, in doing so, Arizona is not unique. See Maecon, Inc. v. State Dept. of Taxation, 761 P.2d 411 (Nev. 1988); Wallace Berrie & Co. v. State Bd. of Equal., 40 Cal.3d, 219 Cal. Rptr. 142, 707 P.2d 204 (1985). Indiana Dept. of State Revenue v. Troy, 149 Ind. App. 600, 274 N.E.2d 302 (1971); Boeing Company v. Omdahl, 169 N.W.2d 696 (N.D. 1969); Bush v. State Tax Commission, 65 Wash.2d 895, 400 P.2d 315 (1965).
In arguing that A.R.S. § 42-1409(A)(1) should be interpreted to exempt all retail sales within the state, the taxpayer has outlined a number of inconsistencies in the statutory scheme which the taxpayer claims could lead to abuse by the Department if the Court permits the use tax to be applied to property purchased within the state. The hypothetical tyranny postulated by the taxpayer is not now before the *521 Court, so the Court is unable to say how any of the potential problems set out by the taxpayer may resolve. From its present perspective, however, the Court is of the view that the taxpayer's concerns are more imagined than real. In any case, the Court cannot interpret the Use Tax Act in a way not intended by the legislature even if that is the only way to forestall future controversies that might arise because exemptions to both taxes are not four square one with the other.
NOTES
[1] It does not appear that the instant case is the first one in which the Department has expressed the view that the Arizona Use Tax may apply to property purchased at retail within the state. See Sales and Use Tax Handbook, American Bar Association Section of Taxation 3-13, § 3-122.01 & N. 3 (D. Young & J. Piper, eds. 1988).
[2] The full text of the minutes of the Senate Finance Committee are provided as follows. Minutes of Senate Committee on Finance, February 9, 1981, Page Four.

S.B. 1103  use tax exemption  AMEND DO PASS
Garrett Smith, legislative advisor to the Department of Revenue, reviewed the bill before the committee. He stated its necessity as being one to restrict those individuals with a retail privilege license from buying goods from wholesalers for their own consumption and therefore never paying sales tax on them. Senator Tenney asked for evidence and examples of violations. Mr. Smith had none available. Senator Rottas clarified the intent of the bill. Senator Hardt sited an example of this type of violation.
Senator Tenney said he didn't see how this could occur because a wholesaler knows who his regular customers are and what they usually purchase. Senator Rottas responded that if an exempt notice is produced the wholesaler no longer has control over the sales tax and the liability needs to be clarified. Senator Weeks said she couldn't recall ever buying anything wholesale and not being asked for her privilege license number.
Mr. Smith said that most violations occur when someone selling a particular item purchases another using exemption number and uses it for his own consumption. This bill would allow audit procedures to restrict this activity and decide liability.
Senator Hill moved the bill with a Do Pass recommendation. He then moved the printed amendment. The motion carried. Senator Hill moved S.B. 1103 as amended. The motion carried by roll call vote of 8-1-0.
[3] See also State Tax Commission v. Quebedeaux Chevrolet, 71 Ariz. 280, 226 P.2d 549 (1951), and the comment on the Quebedeaux decision in Watkins Cigarette Serv., Inc. v. Arizona St. Tax Com'n, 21 Ariz. App. 196, 517 P.2d 1089 (1974) reversed on other grounds in Watkins Cigarette Serv., Inc. v. Arizona St. Tax Com'n, 111 Ariz. 169, 526 P.2d 708 (1974). See also Arizona St. Tax Com'n v. Garrett Corporation, 79 Ariz. 389, 392, 291 P.2d 208 (1955). In Quebedeaux, the taxpayer was a retailer of automobiles who carefully passed on the Transaction Privilege Tax to his customers. Quebedeaux multiplied the price of the automobile times the tax rate, and added the product to his customers bill. The retailer paid the amount added as its tax liability. The Supreme Court did not comment on the propriety of Quebedeaux passing the tax on, but did hold that Quebedeaux's tax liability was the tax rate times what Quebedeaux collected, which included the passed on tax. The legislature, apparently recognizing the disastrous effect of the Quebedeaux decision on the customary way retail business is done, immediately amended the Act to specifically exclude the tax itself from the definition of gross income. This effectively nullified the adverse commercial effect of the Quebedeaux decision.