109 P.3d 118

**QWEST DEX, INC., (formerly US West Dex, Inc.), License No. 07–405645–P, Plaintiff–Appellee,**

v.

**ARIZONA DEPARTMENT OF REVENUE, an agency of the State of Arizona, Defendant–Appellant.**

**No. 1 CA–TX 03–0017.**

Court of Appeals of Arizona,
Division 1, Department T.

April 5, 2005.

224

Fennemore Craig, P.C. By Paul J. Mooney, Steven R. Partridge, Phoenix, Attorneys for Plaintiff–Appellee.

Terry Goddard, Attorney General By Sara D. Branscum, Assistant Attorney General, Elizabeth S. Hill, Assistant Attorney General, Deborah L. Bryant, Assistant Attorney General, Phoenix, Attorneys for Defendant–Appellant.

## OPINION

KESSLER, Judge.

¶ 1 This is a use tax case. It arises out of Arizona's taxation of out-of-state printing services provided to Qwest Dex, Inc. ("Taxpayer"). The tax court ruled that, as a matter of law, the use tax does not apply to these services and that the printers are not "retailers" for purposes of Arizona Revised Statutes ("A.R.S.") section 42–5155(A) (Supp. 2004). For the reasons stated below, we affirm the tax court.

### FACTS AND PROCEDURAL BACKGROUND

¶ 2 Taxpayer is in the business of publishing the White Pages and Yellow Pages telephone directories. It contracted with out-of-state printing companies (the "Printers")[1] to print the directories, and contracted with out-of-state mills (the "Mills")[2] for the paper.

¶ 3 The grade and type of paper required for Taxpayer's directories is not the type regularly kept in the Printers' inventories. Accordingly, Taxpayer entered into separate contracts with the Mills to supply paper for use in the directories. The contracts determined the amount of paper to supply and the paper's price, and Taxpayer determined the paper's weight, color, quality, and type. Taxpayer was financially responsible to the Mills for all paper orders shipped to the Printers on Taxpayer's behalf.

---

1. The Printers include R.R. Donnelly & Sons Co. and Directory Printing Co. (subsequently, Quebecor Printing Directory Sales Corp.).

2. The Mills include Daishowa America Co., Ltd. and Norske Canada, formerly Powell–Alberni Sales Corp.

¶4 In accordance with the agreements with its Printers, Taxpayer was required to supply the paper on which Taxpayer's information would be printed. The Printers were allowed to accept and pay for paper orders on Taxpayer's behalf. Although the Printers might pay the Mills for the paper, they invoiced Taxpayer for the cost.

¶5 Once the Printers received the paper from the Mills, they would print the information supplied by Taxpayer on that paper, glue the papers together into directories, and ship the directories to Taxpayer. The Printers then sent Taxpayer an invoice for the printing services and the incidental amount of tangible personal property, such as glue and ink. The printing charges were stated separately from the requests for reimbursement for payments for paper orders.

¶6 Taxpayer paid a state use tax on the total invoiced cost of the telephone directories used in Arizona, but later claimed a refund of $3,357,529 for the period between January 1995 and June 2000. Taxpayer claimed that it owed a use tax only on the paper that went into directories, but not for the printing services. The Arizona Department of Revenue ("ADOR") denied the refund claim on the basis that Taxpayer properly paid the use tax on all components of the directories. Taxpayer timely protested the denial.

¶7 Taxpayer then appealed the refund denial to the Arizona Tax Court pursuant to A.R.S. § 42–1254(C) (Supp.2004). Both parties moved for summary judgment. The tax court granted Taxpayer's motion and denied ADOR's motion. This appeal followed.

### DISCUSSION

¶8 When the material facts underpinning a summary judgment are undisputed, this Court must determine whether the tax court correctly applied the substantive law to those facts. *Brink Elec. Constr. Co. v. Ariz. Dep't of Revenue,* 184 Ariz. 354, 358, 909 P.2d 421, 425 (App.1995). We review issues of law de novo, and are bound neither by the tax court's conclusions of law nor by its findings combining both fact and law. *Id.*

¶9 In interpreting the use tax statutes, we must bear in mind that "tax statutes are interpreted strictly against the state, and any ambiguities are resolved in favor of the taxpayer." *Wilderness World, Inc. v. Ariz. Dep't of Revenue,* 182 Ariz. 196, 199, 895 P.2d 108, 111 (1995). We read the statutes' words "to gain their fair meaning, but not to gather new objects of taxation by strained construction or implication." *Arizona State Tax Comm'n v. Staggs Realty Corp.,* 85 Ariz. 294, 297, 337 P.2d 281, 283 (1959).

### Nature of Use Tax

¶10 Section 42–5155(A) of A.R.S., which codifies Arizona's use tax, imposes an excise tax "on the storage, use or consumption in this state of tangible personal property purchased from a retailer or utility business, as a percentage of the sales price." "Use or consumption" is defined by statute as "the exercise of any right or power over tangible personal property incidental to owning the property...." A.R.S. § 42–5151(20) (Supp. 2004).

¶11 The relevant statutes do not define "tangible personal property." The transaction privilege tax statutes, however, define "tangible personal property" as "personal property which may be seen, weighed, measured, felt or touched or is in any other manner perceptible to the senses." A.R.S. § 42–5001(16) (Supp.2004). Arizona's use tax defines "retailer" as "[e]very person engaged in the business of making sales of tangible personal property for storage, use or other consumption...." A.R.S. 42–5151(17)(a) (Supp.2004).

¶12 Whereas transaction privilege taxes are imposed on transactions consummated within a state, use taxes are designed to reach out-of-state sales of tangible personal property to a state's residents for use, storage, or consumption in the state. *See People of Faith Inc. v. Ariz. Dep't of Revenue,* 161 Ariz. 514, 519, 779 P.2d 829, 834 (T.C.1989); Nathaniel T. Trelease and Andrew W. Swain, *The Law's Long Arm: The Taxation of Electronic Commerce,* Ariz. Att'y, June 2002, at 20. The use tax thus prevents the erosion of a state's tax base when its residents make purchases in other

states. Trelease and Swain, Ariz. Att'y, June 2002, at 20. Because states cannot audit all residents for use tax purposes, they must rely upon the vendors to collect and remit use taxes. *Id.*

¶ 13 Although the use tax is complementary to the transaction privilege tax, their objectives differ. The transaction privilege tax is more akin to a business privilege tax on gross receipts from taxable activity. A.R.S. § 42–5008 (Supp.2004); *see Southern Pac. Transp. Co. v. Ariz. Dep't of Revenue,* 202 Ariz. 326, 333, ¶ 25, 44 P.3d 1006, 1013 (App. 2002). The tax is imposed on the vendor, not its customers, and although the vendor may elect to pass the burden of the tax onto the customer, the vendor is ultimately liable. A.R.S. §§ 42–5001(8) (Supp.2004), 42–5008(A) (Supp.2004), and 42–5010(A)(1) (Supp.2004). It applies to a variety of businesses, including those not otherwise engaged in the retail sale of tangible personal property. A.R.S. § 42–5010. The transaction privilege tax extends to the business of job printing. *See* A.R.S. § 42–5066 (1999). Arizona's use tax, however, imposes no specific tax on printing services. A.R.S. § 42–5155(A).

### Tangible Personal Property vs. Service

¶ 14 On appeal, ADOR asserts that the use tax applies to the purchase of the directories because the directories qualify as "tangible personal property" and the printers are "retailers" pursuant to A.R.S. § 42–5155(A). According to ADOR, the printers created tangible personal property because they created a new product—the directories—from the paper and content. Therefore, ADOR reasons that Taxpayer must pay the use tax on the purchase of the directories in their final form, not just on the cost of the blank paper.

¶ 15 Taxpayer counters that A.R.S. § 42–5155(A) does not apply here because Taxpayer ultimately purchased a service from the printers and not tangible personal property. Taxpayer points out that it supplied the content and paper to the printers and in turn the printers merely "converted the content to printing plates, printed it on [Taxpayer's] paper and glued the individual pages of the directories together." Taxpayer also asserts

that the printers acted as Taxpayer's agents in acquiring the paper. Taxpayer arranged for the printers to purchase the paper on Taxpayer's behalf to print the directories and the cost of the paper was passed on to Taxpayer. Taxpayer also asserts that the printers are not engaged in selling tangible personal property but instead are engaged in providing a service—here, the printing of the directories.

¶ 16 We agree with Taxpayer's position that the out-of-state printing services are not subject to the use tax. We reach that conclusion by applying two tests: the objective "dominant purpose" test, adopted in *Goodyear Aircraft Corp. v. Arizona State Tax Comm'n,* 1 Ariz.App. 302, 402 P.2d 423 (1965) (the "Goodyear" test), and the "common understanding" test.

### A. Dominant Purpose Test and Goodyear

¶ 17 In cases dealing with a purchase of a combined product and service, courts generally apply a "true object" or "dominant purpose" test. *See Jerome R. Hellerstein and Walter Hellerstein, Sales and Use, Personal Income, and Death and Gift Taxes and Intergovernmental Immunities in State Taxation,* ¶ 12.08, at 78 (3d ed.2001–2003) (hereinafter, "Hellerstein") (noting that courts in Virginia, Massachusetts, Minnesota, Ohio, Montana, Rhode Island, and Wisconsin apply the dominant purpose test to determine whether a transaction constitutes a taxable sale of tangible personal property or a nontaxable sale of services). Thus, if the dominant purpose of the transaction is a service, then the transaction is not taxable. *See id.* As Hellerstein notes, however, this type of test is difficult to apply because most cases deal with a blending of the service and product components. *See id.* at ¶ 12.08(1). The result is often inconsistent rulings which are difficult to reconcile. *See id.* Thus, the Ohio Supreme Court in several decisions, such as *Miami Citizens Nat'l Bank & Trust Co. v. Lindley,* 50 Ohio St.2d 249, 364 N.E.2d 25 (1977), determined that the true object of the transfers of cards containing data and printouts of bank transactions was the transfer of tangible personal property and thus

the transaction was taxable. In comparison, the Texas Supreme Court in *Bullock v. Statistical Tabulating Corp.*, 549 S.W.2d 166, 168 (Tex.1977), determined that the sale of cards containing data was not a taxable sale of tangible personal property, but instead a nontaxable sale of a service. To reach consistent results, some courts have developed objective guidelines to determine the true object of a transaction. Arizona provides such a guideline in *Goodyear*, 1 Ariz.App. at 302, 402 P.2d at 423, with respect to the application of the transaction privilege tax to a transaction involving the combined sale of a service and tangible property.

¶ 18 Goodyear was hired to destroy airplane subassemblies in order to develop engineering information for an airplane manufacturer. *Id.* at 306, 402 P.2d at 427. The tax commission assessed a tax on the subassemblies and on appeal this tax was upheld. *Id.* Goodyear argued on appeal that the activity constituted a sale of engineering services in which tangible personal property was an inconsequential element and therefore tax exempt pursuant to A.R.S. § 42–1312(A)(2) (renumbered A.R.S. § 42–5061(A)(1) (Supp. 2004)).[3] *Id.* This Court however determined that the value of the subassemblies destroyed could be separated from the charge for the engineering services. *Id.* Specifically, this Court stated:

> When there is a fixed and ascertainable relationship between the value of the article and the value of the service rendered in connection therewith so that both may be separately stated, then the vendor is engaged in both selling at retail and furnishing services and is subject to the tax as to

one and tax exempt as to the other. Where the property and the services are distinct and each is a consequential element capable of ready separation, it cannot be said one is an inconsequential element within the exemption provided by the statute.

*Goodyear*, 1 Ariz.App. at 306, 402 P.2d at 427. This Court thus held that the tax assessment on the value of the subassemblies and not the engineering services was correct. *Id.* at 307, 402 P.2d at 428.

¶ 19 Although *Goodyear* involves application of the transaction privilege tax instead of the use tax at issue here, both cases involve the common theme of distinguishing between the sale of tangible personal property and the sale of services for tax purposes. We therefore find that *Goodyear's* analysis on this issue is applicable to use tax cases and accordingly apply it here.[4]

■ ¶ 20 Under *Goodyear*, we find that the act of printing the directories and the finished product (the physical directories) are distinct and easily separated. The cost is easily separated as Taxpayer (or the printers on behalf of Taxpayer) purchased the paper from another source and paid the paper source for the cost of the paper. The printers charged a fee for the printing of the directories, which was separate and distinct from the cost of the paper. Also, the transaction itself is easily separated into two transactions since one company provided the paper and a wholly different company provided the printing service. Moreover, the cost of the paper in this case was inconsequential

---

**3.** Arizona's transaction privilege tax, A.R.S. § 42–5061(A)(1) (Supp.2004) provides that:

A. The retail classification is comprised of the business of selling tangible personal property at retail.... The tax imposed on the retail classification does not apply to the gross proceeds of sales or gross income from:

1. Professional or personal service occupations or businesses which involve sales or transfers of tangible personal property only as inconsequential elements.

Thus the statute delineates the tax treatment of a transaction involving the rendition of services and the transfer of tangible personal property. *See id.*

**4.** Other courts have similarly applied the principle enunciated in *Goodyear* to use tax cases. *See,*

*e.g., In re Advance Schools, Inc.*, 2 B.R. 231, 235 (Bankr.N.D.Ill.1980) (Correspondence school was liable for payment of use taxes on that portion of tuition collected from its students which was attributable to sale of learning materials; service provided by correspondence school and property transferred were severable for tax purposes); *New England Tel. & Tel. Co. v. Clark*, 624 A.2d 298, 302 (R.I.1993) (Engineering services rendered in connection with telephone company's acquisition of central-office equipment were not subject to use tax as services that are part of sale of tangible personalty; both the equipment and the service element of transaction constituted distinct and severable transactions).

to the cost of printing the directories. Accordingly, under *Goodyear*, we find that the tax court correctly found that the use tax does not apply to the out-of-state printing services.

¶ 21 Our position is further supported by *State Tax Comm'n v. Holmes & Narver, Inc.*, 113 Ariz. 165, 169, 548 P.2d 1162, 1166 (1976). There, the taxpayer entered into a contract involving the construction, design and engineering of three plants. *Id.* at 166, 548 P.2d at 1163. Although one contract was entered into for both the construction and design and engineering services, the parties itemized and separately billed for the design and engineering services. *Id.* at 167, 548 P.2d at 1164. The taxpayer attempted to pay a transaction privilege tax on the construction costs but not on the design and engineering services (when services were performed out of state); however, the State collected taxes on both accounts. *Id.* The trial court determined that the design and engineering services were not taxable, since they were performed out of state. *Id.* On appeal, our supreme court agreed, finding the situation similar to that in *Goodyear*:

> The tax is on the contracting business, not merely on the form of a series of contracts performed in the pursuance of that business. Here the business is two-fold: design and engineering, and construction. Where it can be readily ascertained without substantial difficulty which portion of the business is for non-taxable professional services (design and engineering), the amounts in relation to the company's total taxable Arizona business are not inconsequential, and those services cannot be said to be incidental to the contracting business, the professional services are not merged for tax purposes into the taxable contracting business and are not subject to taxation.

*Id.* at 169, 548 P.2d at 1166.

¶ 22 Here, it can be "readily ascertained" which portion of the transaction relates to non-taxable printing services and which portion relates to the taxable sale of tangible personal property. Taxpayer received invoices for the printing services and the incidental amount of tangible personal property, such as glue and ink. Also, Taxpayer negotiated a contract directly with the Mills for the amount of paper the Mills would supply to the Printer on Taxpayer's behalf. The Printers separately stated from the printing charges all requests for reimbursement of payments for paper orders. Moreover, the printing service cannot be said to be incidental or inconsequential to the Arizona taxable business. Thus the printing services are easily separated from and not merged into the paper purchases. Pursuant to *Goodyear* and *Holmes & Narver*, the services are nontaxable.

### B. Common Understanding Test

■ ¶ 23 Even assuming the *Goodyear* test is inapplicable to the use tax, we reach the same conclusion under an alternative test applied to transactions involving a combined product and service—the common understanding test. Hellerstein, *supra* ¶ 17. Under this test, whether a transaction qualifies as the sale of tangible personal property or the sale of a service is determined by the parties' common understanding of the particular trade, business, or occupation. *See id.* For example, in *Dun & Bradstreet, Inc. v. City of New York*, 276 N.Y. 198, 204–05, 11 N.E.2d 728 (N.Y.1937), the New York court determined that books containing credit ratings constituted a service and not tangible personal property pursuant to the common understanding test. The court analogized such information to telephone directories:

> One does not think of a telephone company as a seller of books to its subscribers. It renders a service. To make that service efficient, it furnishes its subscribers with books containing a list of its subscribers with their call numbers. The paper is a mere incident; the skilled service is that which is required.

*Dun & Bradstreet*, 276 N.Y. at 205, 11 N.E.2d 728 (internal quotation omitted).[5]

---

5. Other courts have applied the common understanding test enunciated in *Dun & Bradstreet*, 276 N.Y. at 204–05, 11 N.E.2d 728. *See Community Telecasting Serv. v. Johnson*, 220 A.2d 500 (Me.1966) (citing *Dun & Bradstreet*, 276 N.Y. at 204–05, 11 N.E.2d 728) (Pamphlets sold to televi-

■ ¶ 24 Applying the common understanding test, we determine that Taxpayer does not owe a use tax on the printing of the directories. Few would dispute that the Printers provided a service to Taxpayer in agreeing to print the directories. Indeed, the very nature of the term "printing" denotes a service and not a tangible item.[6] Moreover, case law has articulated that printers who print specific material on paper for a customer are not engaged in the business of selling tangible personal property, but are instead engaged in a service. *H.G. Adair Printing Co. v. Ames,* 364 Ill. 342, 343, 4 N.E.2d 481, 481 (1936) (citing *Burgess Co. v. Ames,* 359 Ill. 427, 429, 194 N.E. 565, 566 (1935)). The reasoning is that the paper is of no use to anyone except the customer for whom the printing is done. *Id.*

### Would the Service be Taxed if Performed in Arizona?

¶ 25 While we have determined that the printing service here was not subject to the use tax, we recognize that Arizona's transaction privilege and use taxes are complementary. *See People of Faith Inc.,* 161 Ariz. at 519, 779 P.2d at 834. Thus, our conclusion would be further supported if the transaction privilege tax did not apply to in-state printing service. However, Arizona imposes the transaction privilege tax on the gross receipts of the Arizona printer as job printing. A.R.S. § 42–5066.

¶ 26 This varying treatment does not change our conclusion as to the use tax here. The job printing classification, unlike the use tax, specifically includes a provision for such a tax on job printing.[7] Arizona's use tax, in contrast, imposes no specific tax on printing

services. We must construe the tax statute strictly against the state and resolve any ambiguities in favor of the taxpayer. *See Wilderness World, Inc.,* 182 Ariz. at 199, 895 P.2d at 111. In the absence of a legislative amendment imposing a tax on out-of-state printing, we will not impose such a tax on the printing services provided to Taxpayer.

### Statutory Definitions and Purpose of Use Tax

¶ 27 ADOR contends that the definition of sales price bolsters its argument that the use tax applies to the transaction at issue. " 'Purchase price' or 'sales price' means the total amount for which tangible personal property is sold, *including any services that are a part of the sale ....*" A.R.S. § 42–5151(14) (Supp.2004) (emphasis added). Thus, ADOR contends the total sales price of the directories includes "any services that are part of the sale."

¶ 28 This argument does not advance ADOR's position. Section 42–5155(A) provides that the use tax applies to tangible personal property only—not to the total sales price. Moreover, the definition of sales price does not distinguish between a tangible product which is taxed and a service which is not taxed. *See id.*

¶ 29 ADOR contends that the fact that the Printers obtained some of the paper establishes that the Printers were the ones supplying the tangible property and qualifies them as retailers for purposes of the use tax. ADOR also points out that the transaction privilege tax statutes limit the definition of "retailer" to those engaged in businesses classified under the retail classification pur-

---

sion station containing results of market surveys, which indicated which programs audience was watching, represented the performance of a service, so that transaction was not subject to use tax; the market survey and the booklets were incidental to the transaction); *Fingerhut Prods. Co. v. Comm'r of Revenue,* 258 N.W.2d 606, 610 (Minn.1977) (citing *Dun & Bradstreet,* 276 N.Y. at 204–05, 11 N.E.2d 728) (typed mailing lists used by direct-mail merchandiser were not subject to use tax; the use of the tangible medium of the lists is merely incidental to the use of the information contained in those lists).

6. "Printing" is defined as "[t]o produce something in printed form by means of a printing press or other reproduction process." The American Heritage Dictionary of the English Language (4th ed.2000).

7. The job printing transaction privilege tax does not apply to the out-of-state transaction at issue here because the printing company does not have a nexus with Arizona. *See Quill Corp. v. North Dakota,* 504 U.S. 298, 306–07, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992) (holding that a taxing jurisdiction may establish a nexus with a remote vendor only if the vendor is physically present in the jurisdiction).

suant to A.R.S. § 42–5061(A). In contrast, the use tax statute defines "retailer" as "[e]very person engaged in the business of making sales of tangible personal property for storage, use or other consumption...." A.R.S. § 42–5151(17)(a). According to ADOR, this broader definition signals the Legislature's intent to impose the use tax on property purchased in transactions beyond basic retail sales. We reject ADOR's arguments.

¶ 30 The Printers are not retailers of telephone directories. The Printers are not in the business of selling telephone directories and Taxpayer was not buying telephone directories from the Printers. Taxpayer purchased the services of the Printers to print Taxpayer's material on Taxpayer's paper, and did not hire the Printers to create directories out of their own materials and paper. Also, the definition of "retailer" under the use tax does not distinguish between tangible personal property and services which are applied to create or alter property.

¶ 31 Next, ADOR points to the use tax exemptions as an indication that the Legislature intended for the use tax to apply to transactions that would not otherwise be subject to the transaction privilege tax. See A.R.S. § 42–5159 (Supp.2004). This argument urges us to expand the scope of the use tax beyond the clear language of the statute. However, we read the statutes' words "to gain their fair meaning, but not to gather new objects of taxation by strained construction or implication." *Arizona State Tax Comm'n v. Staggs Realty Corp.*, 85 Ariz. at 297, 337 P.2d at 283. Here, A.R.S. § 42–5155(A) does not provide for a use tax on services furnished by an out-of-state printer to an Arizona taxpayer and there is no clearly expressed legislative intent to the contrary.

¶ 32 Finally, ADOR argues that the underlying purpose of the use tax, to prevent the purchase of tax-free tangible personal property out-of-state, supports application of the use tax here. See *Service Merch., Co. v. Ariz. Dep't of Revenue*, 188 Ariz. 414, 937 P.2d 336 (App.1996); *Statewide Multiple Listing Serv., Inc. v. Norberg*, 120 R.I. at 937, 392 A.2d 371 (R.I.1978). Taxpayer dis-

tinguishes these cases by stating that in those cases there was no indication that the taxpayers purchased the paper separately from the completed product. See *Service Merch.*, 188 Ariz. at 414, 937 P.2d at 336, and *Norberg*, 120 R.I. at 937, 392 A.2d at 371. We agree with Taxpayer.

¶ 33 The *Service Merchandise* taxpayer argued that catalogs and fliers printed by non-Arizona companies and distributed in Arizona were not subject to the use tax. *Id.* at 416, 937 P.2d at 338. We held that although the taxpayer's activities were conducted by agents, their use in Arizona by the taxpayer was subject to the use tax. *Id.* No one argued, however, that printing and paper services were separate transactions and we find no indication that the *Service Merchandise* taxpayer purchased the paper separately from the printing service. Thus, we did not determine whether the service and property assets of the transaction were readily separable.

¶ 34 In *Norberg*, the Rhode Island Supreme Court held that a transaction between the Multiple Listing Service ("MLS") and a printer, who produced booklets that set forth real estate listings for use by its member realtors, constituted the transfer of tangible personal property subject to the use tax case. 120 R.I. at 943, 392 A.2d at 374. Nothing in *Norberg* indicates that the MLS purchased the paper from another source separate from the printer. *Id.* 120 R.I. at 938–39, 392 A.2d at 372–73. Instead, it appears that the taxpayer purchased the completed product, including the paper, from the printer. *Id.* Thus, the *Norberg* court also did not directly confront the situation in which the service and the property aspects of the transaction are readily separable. See *New England Tel. & Tel. Co.*, 624 A.2d at 301 (citing *Goodyear*, 1 Ariz.App. at 306–07, 402 P.2d at 427–28). Also, in *Norberg* the printer would "rearrange and reindex" the material supplied by MLS on the printer's computer. 120 R.I. at 938, 392 A.2d at 372.

¶ 35 In sum, we do not find ADOR's arguments persuasive and conclude that the use tax does not apply to the transaction at issue.

## CONCLUSION

¶ 36 For the foregoing reasons, we affirm the tax court's rulings. In addition, we award Taxpayer reasonable attorneys' fees in accordance with A.R.S. § 12–348(B)(1) (2003), subject to compliance with Rule 21(C) of the Arizona Rules of Civil Appellate Procedure.

CONCURRING: PHILIP HALL, Presiding Judge, and ANN A. SCOTT TIMMER, Judge.