193 P.3d 330

DUKE ENERGY ARLINGTON VALLEY, LLC, a Delaware limited liability company; Griffith Energy, LLC, a Delaware limited liability company; Mesquite Power, LLC, a Delaware limited liability company; New Harquahala Generating Company, LLC, a Delaware limited liability company, Plaintiffs/Appellants,

v.

ARIZONA DEPARTMENT OF REVENUE, Defendant/Appellee.

No. 1 CA–TX 07–0009.

Court of Appeals of Arizona, Division 1, Department T.

July 15, 2008.

Mooney Wright & Moore PLLC By Paul J. Mooney, Jim L. Wright, Mesa, Attorneys for Plaintiffs/Appellants.

Terry Goddard, Attorney General By Frank Boucek, III, Kenneth J. Love, Michael F. Kempner, Assistant Attorneys General, Phoenix, Attorneys for Defendant/Appellee.

**OPINION**

BARKER, Judge.

¶ 1 Duke Energy Arlington Valley, Griffith Energy, Mesquite Power, and New Harquahala Generating Company ("Taxpayers") appeal from the trial court's grant of sum-

mary judgment to the Arizona Department of Revenue ("Department"). We affirm for the reasons that follow.

## I.

¶ 2 The Taxpayers operate electric generation facilities in Arizona. The Department issued final notices of value for each of the facilities at issue for tax year 2005 utilizing depreciation tables that prescribe a twenty-five-year economic life. The Taxpayers filed a complaint for declaratory judgment, asking that the tables described in Arizona Revised Statutes ("A.R.S.") section 42–14156(A)(3)—utilized in preparing the Taxpayers' property valuations—be declared invalid. The Taxpayers subsequently filed a motion for summary judgment, arguing that the tables were (1) a rule under A.R.S. § 41–1001(17) and (2) invalid because the Department did not comply with the requirements of the Arizona Administrative Procedure Act ("APA"), A.R.S. §§ 41–1001 to –1092.12 (2004 & Supp. 2005).[1] The Department filed a cross motion for summary judgment, arguing that the tables were not a rule under § 41–1001(17), but rather a guideline. The Department argued in the alternative that it had complied with "the spirit and goals of the rulemaking process."

¶ 3 The tax court ruled in favor of the Department, finding that "because the plain language of the statute refers to the Table as a guideline, ... [it] exempts the Department from the general rulemaking requirements of the APA." This timely appeal followed. We have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

## II.

¶ 4 Our review of the tax court's grant of summary judgment is de novo. *Qwest Dex, Inc. v. Ariz. Dep't of Revenue,* 210 Ariz. 223, 225, ¶ 8, 109 P.3d 118, 120 (App.2005). When the material facts are undisputed, our role is to "determine whether the [tax] court correctly applied the substantive law to those facts." *Brink Elec. Constr.*

*Co. v. Ariz. Dep't of Revenue,* 184 Ariz. 354, 358, 909 P.2d 421, 425 (App.1995).

¶ 5 In Arizona the valuation of electric generation facilities is governed by A.R.S. § 42–14156(A) (Supp.2007), which provides as follows:

2. The valuation of real property improvements used in operating the facility is the cost multiplied by valuation factors prescribed by tables adopted by the department.

3. The valuation of personal property used in operating the facility is the cost multiplied by the valuation factors as prescribed by tables adopted by the department, adjusted as follows:

(a) For the first year of assessment, the department shall use thirty-five per cent of the scheduled depreciated value.

(b) For the second year of assessment, the department shall use fifty-one per cent of the scheduled depreciated value.

(c) For the third year of assessment, the department shall use sixty-seven per cent of the scheduled depreciated value.

(d) For the fourth year of assessment, the department shall use eighty-three per cent of the scheduled depreciated value.

(e) For the fifth and subsequent years of assessment, the department shall use the scheduled depreciated value as prescribed in the department's guidelines.

4. In addition to the computation prescribed in paragraphs 2 and 3 of this subsection, the taxpayer may submit documentation showing the need for, and the department shall consider, an additional adjustment to recognize obsolescence using standard appraisal methods and techniques.

¶ 6 At issue here is whether the tables described in subsections (2) and (3) are rules as defined by the APA, in which case their adoption and promulgation would be governed by the APA, or whether they are something other than a rule and accordingly

---

1. Specifically, Taxpayers contend that the Department did not comply with A.R.S. § 41–1030, which provides that *"A rule* is invalid unless it is made and approved in substantial compliance with sections 41–1021 through 41–1029 and articles 4, 4.1 and 5 of this chapter, unless otherwise provided by law." (Emphasis added.)

not governed by the APA. This case is a companion case to *Griffith Energy, L.L.C. v. Arizona Department of Revenue,* 210 Ariz. 132, 108 P.3d 282 (App.2005). In that case, this court upheld the Department's adoption of the tables but did not address, for procedural reasons, the question of whether the tables are a rule under the APA. *Id.* at 137, ¶ 25, 108 P.3d at 287. We now address that question.

¶ 7 As described below, we determine the tables are guidelines and not rules for two primary reasons: First, the language of subsection (4) makes clear that the legislature intended they operate as guidelines rather than rules, and second, the tables operate more as guidelines than rules.

## A.

■ ¶ 8 In construing a statute our first consideration is always the language of the statute itself. *Mago v. Mercedes–Benz, U.S.A., Inc.,* 213 Ariz. 404, 408, ¶ 15, 142 P.3d 712, 716 (App.2006) ("[W]e first look to the language of the statute and will ascribe plain meaning to the terms unless they are ambiguous."). In this case, the statutory scheme adopted by the legislature indicates that the "valuation of personal property used in operating the facility is the cost multiplied by the valuation factors as prescribed by *tables* adopted by the department." A.R.S. § 42–14156(A)(3) (emphasis added). For personal property, the values determined by the tables are then statutorily adjusted by a certain percentage for each of the first four years. A.R.S. § 42–14156(A)(3)(a)–(d). For the fifth year and subsequent years, the statute does not adjust the value derived by the tables, but states that "the department shall use the scheduled depreciated value *as prescribed in the department's guidelines.*" A.R.S. § 42–14156(A)(3)(e) (emphasis added). Thus, § 42–14156(A) makes clear that for the first four years, the legislature established that a discounted percentage of the value arrived at by the tables would be used, but

that for years five and beyond, the value from the tables would be used without discount.

¶ 9 The Taxpayers argue that the reference to guidelines in subsection (3)(e) does not refer to the tables, but rather stipulates that the "[t]able-derived value is to be 'adjusted' in the fifth year of assessment and beyond according to 'the scheduled depreciated value as prescribed in the department's guidelines.'" Under the Taxpayers' interpretation, the word "guidelines" would presumably refer to unspecified guidelines apart from the tables that would be used to adjust the value in the tables. We disagree.

¶ 10 It is the values in years one through four that are actually being adjusted. In subsections (3)(a) through (3)(d), the statute prescribes a percentage discount of the table-derived value. For example, subsection (3)(a) prescribes that "the department shall use thirty-five per cent of the scheduled depreciated value." Thus, the value assigned the property during the first year of assessment is only thirty-five percent of the value arrived at through the Department's tables of valuation factors.[2] However, in the fifth year and beyond, no adjustment is needed, because subsection (3)(e) prescribes that the value is simply "the scheduled depreciated value as prescribed in the department's guidelines," or in other words, the value in the tables in question. Thus, the "department's guidelines" in subsection (3)(e) clearly refers to the "tables" referenced in the body of subsection (3). The legislature accordingly designated the tables as "guidelines."

¶ 11 That subsection (3)(e) refers to the tables as guidelines, and not rules, is clearly an indication that the legislature intended these tables to function as guidelines, and not rules. The legislature is capable of requiring the Department to adopt rules when it so desires. *See, e.g.,* A.R.S. § 42–3304(B) (Supp.2007) ("The department shall adopt rules prescribing the procedures for claiming

---

**2.** The tables appear to have incorporated this statutorily mandated percentage, such that the values arrived at by applying the current tables need not be discounted because the discount is already factored in. Thus, the multiplication factor for year 1 of the tables is .35 and for years 5

and beyond it is 1. This incorporation of the statutorily defined percentages into the tables does not materially alter the nature of the statute nor the function of the tables themselves, and thus plays no role in our analysis.

and verifying sales that are exempt under this section."); A.R.S. § 42–5009(H)(6) (2006)[3] ("The department of revenue, with the cooperation of the department of commerce, shall adopt rules and publish and prescribe forms and procedures as necessary to effectuate the purposes of this subsection."); A.R.S. § 42–5106(A) (2006) ("The department shall adopt rules defining food consistent with § 42–5101 and this section."). The legislature is also capable of requiring the Department to prepare or maintain guidelines. *See, e.g.,* A.R.S. § 42–11054(A) (Supp.2007) ("[T]he department shall ... [p]rescribe guidelines for applying standard appraisal methods and techniques that shall be used by the department...."); A.R.S. § 42–13007(C) (2006) ("The committee shall evaluate ... [ t] he guidelines proposed by the department for placing persons who apply for admission to the assessor certification program...."); A.R.S. § 42–13152 (2006) ("[C]ounty assessors shall value all golf courses uniformly based on guidelines prescribed by the department."). In some situations, the legislature requires that both rules and guidelines be adopted. *See, e.g.,* A.R.S. § 32–2183.01(E) (2008) ("The commissioner may adopt such rules and guidelines as the commissioner deems necessary to protect the public interest ...."). The legislature has even made clear that when it wants a guideline to be adopted by rule, it makes that explicit. *See* A.R.S. § 4–201(I) (2002) ("The board shall adopt, by rule, guidelines setting forth criteria for use in determining [where liquor licenses should go]....").

¶ 12 We assume the legislature meant what it said. *Wallis v. Ariz. Dep't of Econ. Sec.,* 126 Ariz. 582, 585, 617 P.2d 534, 537 (App.1980); *see Roman Catholic Diocese of Phoenix v. Superior Court,* 204 Ariz. 225, 231, ¶ 17, 62 P.3d 970, 976 (App.2003). Here, the legislature made clear that the tables in question were intended to be a guideline.

**B.**

¶ 13 Not only did the legislature intend and specify that the tables be a guideline

rather than a rule, the tables function more like a guideline than a rule.

¶ 14 The APA defines a rule as "an agency statement of general applicability that implements, interprets or prescribes law or policy, or describes the procedure or practice requirements of an agency." A.R.S. § 41–1001(17). In order to be considered a rule, the statement must implement, interpret or prescribe law or policy, and not be merely an element to aid in the determination of the statutorily mandated valuation. *See Shelby Sch. v. Ariz. State Bd. of Educ.,* 192 Ariz. 156, 167, ¶ 48, 962 P.2d 230, 241 (App.1998). In *Shelby School,* the State Board of Education required charter school applicants to pass a credit check in order to receive a charter contract. *Id.* at 161, ¶ 7, 962 P.2d at 235. Although the credit check was being done in order to implement the approval mandate of A.R.S. § 15–183(C)(2), this court determined that "[a]lthough the creditworthiness requirement might appear to implement the charter schools statute, on close examination it instead is *merely an element* to be considered by the Board to aid it in exercising its discretion in the awarding of school charters." *Id.* at 160, 167, ¶¶ 2, 48, 962 P.2d at 234, 241 (emphasis added).

¶ 15 Here the tables are only one element in determining the statutorily mandated value. While A.R.S. § 42–14156(A)(3) requires that the Department use the tables as the first element in determining the value of the personal property, subsection (4) prescribes that "[i]n addition to the computation prescribed in paragraph[ ] ... 3 of this subsection, the taxpayer may submit documentation showing the need for, and the department shall consider, an additional adjustment to recognize obsolescence using standard appraisal methods and techniques." In other words, the tables are one element of the valuation process; the obsolescence adjustment is another. The Department is required to consider the additional adjustment upon submission by the taxpayer of documentation showing such a need. A.R.S. § 42–14156(A)(4) ("the department *shall* consider") (emphasis added). Because the stat-

---

**3.** This section has recently been amended; however, subsection (H)(6) was not affected by the change. 2008 Ariz. Sess. Laws, ch. 246, § 5 (2nd Reg.Sess.).

ute mandates that the Department consider an obsolescence adjustment *in addition to* the value prescribed by the tables, the tables are not a complete implementation of the statute, but rather one element of the process of arriving at a value for the personal property.

¶ 16 The Taxpayers argue that "[t]he Department is fully aware that it is the adoption of the 25-year life in its personal property Table that [the Taxpayers] believe should have been made subject to the APA." However, this is the exact part of the tables that is modified when an obsolescence adjustment is made.[4] Therefore, the 25-year life is the specific part of the valuation that functions most like a guideline and not a rule, because that is the factor for which a taxpayer can request an adjustment.

¶ 17 The Taxpayers further argue that at best, from the Department's perspective, A.R.S. § 42–14156(A) is ambiguous in its designation of the tables as a guideline and that any ambiguity in tax statutes is to be construed strictly against the State. *People's Choice TV Corp., Inc. v. City of Tucson*, 202 Ariz. 401, 46 P.3d 412 (2002); *Wilderness World, Inc. v. Dep't of Revenue*, 182 Ariz. 196, 895 P.2d 108 (1995). For the reasons previously discussed *supra*, ¶¶ 8–12, we reject the argument that the statute is ambiguous. The statute clearly refers to the tables as guidelines and they function as such.

¶ 18 Because the language of A.R.S. § 42–14156(A) establishes that the legislature refers to the tables as a guideline and not a rule, and because the tables function as a guideline and not a rule, we reject the Taxpayers' argument that the tables are a rule under the APA.[5]

### C.

■ ¶ 19 The Taxpayers further argue that designating the tables as a guideline, rather than a rule, eliminates procedural protections by allowing the Department to act without accountability. We disagree.

¶ 20 This specific issue was addressed in *Griffith*, where this court found that a challenge to the adoption of these tables is reviewed by the courts under an abuse of discretion standard. *Griffith*, 210 Ariz. at 135, ¶¶ 12, 13, 108 P.3d at 285 (*citing Ariz. State Highway Comm'n v. Superior Court*, 81 Ariz. 74, 299 P.2d 783 (1956)). Under that standard of review, the tax court looks to see if the adoption of the tables was arbitrary and capricious. *Griffith*, 210 Ariz. at 135, ¶ 14, 108 P.3d at 285. This standard of review provides court review of the administrative agency's decisions regardless of whether the APA is implicated.

¶ 21 After establishing the correct standard of review in *Griffith*, this court examined the adoption of the tables in question here and determined that the Department had adopted the tables "based on a rational basis and after due consideration." *Griffith*, 210 Ariz. at 136, ¶ 21, 108 P.3d at 286. In arriving at this conclusion, the court considered evidence concerning the process utilized by the Department in adopting the tables, including that the Department obtained information from new merchants and incumbent providers, that it reviewed a depreciation study, and that it surveyed all other states to determine their assigned life spans. *Id.* at 136, ¶ 20, 108 P.3d at 286.

¶ 22 Therefore, we reject the Taxpayers' argument that designating the tables a guideline will both allow tax policy to be formulated "without any accountability" and allow the Department to not "consider any facts when it exercises discretion that will affect taxpayers ... throughout Arizona."[6]

---

4. Obsolescence is the "process of becoming obsolete" or "no longer useful." Merriam Webster's Collegiate Dictionary 801 (10th ed.) (2001). Effectively, therefore, an obsolescence adjustment lowers the life span over which the property is valued.

5. The Taxpayers cite to, and discuss at length, a recent unpublished decision of the tax court in order to argue that this court should consider the tables to be a rule and not a guideline. We

decline to address that decision, as unpublished decisions of the tax court are "not binding legal precedent and cannot be cited." ARCAP 28.1(b) (excepting as prescribed under Rule 28, an exception not applicable here); *see* ARCAP 28(c).

6. The Department makes two additional arguments that we do not address in this opinion. The Department argues that the legislature adopted the Department's interpretation of the statute by reenacting it, and that there is an

It is clear that regardless of the implication of the APA in the adoption of the tables, the courts are empowered to maintain the Department's accountability in this regard.

### III.

¶ 23 For the reasons stated above, we affirm the tax court's judgment.

CONCURRING: DONN KESSLER, Presiding Judge and PHILIP HALL, Judge.

exception to the requirements of the APA for situations where complying with its requirements would be impractical. Because we find that the tables are a guideline and not a rule, we do not reach these issues.