NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

LEGACY EDUCATION GROUP, et al., *Plaintiffs/Appellants*,

*v.*

ARIZONA STATE BOARD FOR CHARTER SCHOOLS,
*Defendant/Appellee.*

No. 1 CA-CV 17-0023
FILED 5-8-2018

Appeal from the Superior Court in Maricopa County
No. CV2016-051845
The Honorable John R. Hannah, Jr., Judge

**VACATED AND REMANDED**

COUNSEL

Buchalter, Scottsdale
By Roger W. Hall
*Co-Counsel for Plaintiffs/Appellants*

Osborn Maledon, P.A., Phoenix
By Lynne C. Adams, Eric M. Fraser
*Co-Counsel for Plaintiffs/Appellants*

Arizona Attorney General's Office, Phoenix
By Karen J. Hartman-Tellez, Kim S. Anderson, Kathleen Sweeney
*Counsel for Defendant/Appellee*

Scharf-Norton Center for Constitutional Litigation at the
 Goldwater Institute, Phoenix
By Timothy Sandefur
*Counsel for Amicus Curiae Goldwater Institute*

---

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Jennifer B. Campbell and Judge Paul J. McMurdie joined.

---

**W I N T H R O P**, Presiding Judge:

**¶1** Legacy Education Group doing business as East Valley High School and Tucson Preparatory School (collectively, "the Schools") operate charter schools sponsored by the Arizona State Board for Charter Schools ("the Board"). Under Arizona Revised Statutes ("A.R.S.") section 15-183(R),[1] charter school sponsors such as the Board must adopt a performance framework to serve as a basis for the actions they take in implementing their oversight and administrative responsibilities with respect to the schools they sponsor. The Schools filed a complaint against the Board, seeking in part, a determination that some or all the academic and financial performance frameworks (collectively, "Frameworks") adopted by the Board were rules subject to the rulemaking process provided for in Arizona's Administrative Procedure Act ("APA"). *See* A.R.S. §§ 41-1001 to -1093.02. The superior court concluded the APA did not apply to the Frameworks—and thus, the Board was not required to utilize the APA's rule-making process—and dismissed the Schools' complaint with prejudice pursuant to Arizona Rule of Civil Procedure ("Rule") 12(b)(6). The Schools appealed, and we conclude the Frameworks generally constitute rules that must be promulgated in compliance with the APA.[2] Accordingly, we vacate the judgment and remand for further proceedings consistent with this decision.

---

[1] We refer to the current version of the statutes unless otherwise noted. Statutes marked with the "(†)" symbol refer to the version in place before August 1, 2012.

[2] Our decision is limited to this determination.

**FACTS AND PROCEDURAL HISTORY**

*I.    Background on Charter Schools and the Board*

**¶2**          In Arizona, charter schools are public, state-funded schools designed to provide "additional academic choices for parents and pupils" and "a learning environment that will improve pupil achievement."  A.R.S. § 15-181(A).  Applicants seeking to establish a charter school must apply to and contract with an authorized sponsor.  A.R.S. §§ 15-101(4), -183(A).  Only (1) the Board, (2) the State Board of Education, (3) a university under the jurisdiction of the Arizona Board of Regents, (4) a community college district, or (5) a group of community college districts may sponsor a charter school.  A.R.S. § 15-183(C).  The Board sponsors the clear majority of Arizona charter schools, has the authority to determine policy, and can sue and be sued.  *See* A.R.S. § 15-182(E)(6), (F)(2).

**¶3**          A charter school must comply with the terms of its charter contract (the agreement between the school and its sponsor), some state laws governing traditional school districts, laws applying specifically to charter schools, and policies adopted by the school's sponsor.  *See generally* A.R.S. § 15-183(E), (G), (I), (R).  A school's sponsor has "oversight and administrative responsibility" for the charter schools it sponsors, and in implementing those responsibilities, the sponsor must "ground its actions in evidence of the charter holder's performance in accordance with the performance framework adopted by the sponsor."  A.R.S. § 15-183(R).  "The performance framework shall be publicly available, shall be placed on the sponsoring entity's website[,] and shall include" enumerated performance expectations.  *Id.*

*II.    Pre-2012 Supervision of Charter Schools*

**¶4**          In 1994, the legislature authorized charter schools and formed the Board as a state agency.  *See* 1994 Ariz. Sess. Laws, ch. 2, § 2 (9th Spec. Sess.).  Between 1994 and 2012, the Board and several other statutory sponsors supervised charter schools.[3]  Each sponsor, including the Board,

---

[3]      Initially, only the Board, the State Board of Education, and a school district governing board could be a sponsor.  *See* 1994 Ariz. Sess. Laws, ch. 2, § 2 (9th Spec. Sess.).  In 2010, the legislature added as sponsors (1) a university under the jurisdiction of the Arizona Board of Regents, (2) a community college district with enrollment of more than fifteen thousand full-time equivalent students, and (3) a group of community college

had oversight and administrative responsibility for each charter school it sponsored. A.R.S. § 15-183(R) (†). As part of that oversight and administrative responsibility, a sponsor was required to review every charter school at five-year intervals and could revoke a charter at any time if the charter school breached one or more provisions of its charter. A.R.S. § 15-183(I)(3) (†). In addition to those powers and responsibilities applicable to all sponsors, the Board had specific authority and obligation to "[e]xercise general supervision over" the charter schools it sponsored. A.R.S. § 15-182(E)(1) (†).

**¶5** The Board exercised its authority and obligations through (1) rules applicable to all schools, and (2) individual adjudications specific to a school. The rules applicable to all charter schools appeared in the Arizona Administrative Code ("A.A.C.") and were subject to the administrative rulemaking process. *See* A.A.C. R7-5-101 to -504. For individual adjudications, the Board generally followed specific statutory procedures, including, in the case of revoking a charter, notice to the school of the intent to revoke the charter, a period of at least ninety days to correct the identified problems, and a public hearing. A.R.S. § 15-183(I)(3) (†).

> III. *The Legislative Requirement for the Board to Create Frameworks*

**¶6** In 2012, the Arizona Legislature expanded subsection (R) of A.R.S. § 15-183, requiring sponsors to adopt a performance framework to govern each sponsored charter school. Revised subsection (R) read as follows (with the newly added language in italics):

> The sponsoring entity of a charter school shall have oversight and administrative responsibility for the charter schools that it sponsors. *In implementing its oversight and administrative responsibilities, the sponsor shall ground its actions in evidence of the charter holder's performance in accordance with the performance framework adopted by the sponsor. The performance framework shall include:*
>
> *1. The academic performance expectations of the charter school and the measurement of sufficient progress toward the academic performance expectations.*

---

districts with a combined enrollment of more than fifteen thousand full-time equivalent students. *See* 2010 Ariz. Sess. Laws, ch. 332, § 3 (2nd Reg. Sess.). In 2016, school district sponsorship of new charter schools was discontinued. *See* 2016 Ariz. Sess. Laws, ch. 124, § 3 (2nd Reg. Sess.).

*2. The operational expectations of the charter school, including adherence to all applicable laws and obligations of the charter contract.*

*3. Intervention and improvement policies.*

*See* 2012 Ariz. Sess. Laws, ch. 155, § 1 (2nd Reg. Sess.). Thus, the performance framework required a sponsor to address three topics: (1) "academic performance," (2) "operational expectations," and (3) "[i]ntervention and improvement." A.R.S. § 15-183(R). In 2013, the legislature amended A.R.S. § 15-183(R) to require that sponsors make the frameworks publicly available on the internet. *See* 2013 Ariz. Sess. Laws, ch. 68, § 1 (1st Reg. Sess.).

**¶7**        When the legislature amended A.R.S. § 15-183(R) in 2012 to require charter school sponsors to adopt the performance frameworks, the APA's rulemaking requirements did not apply to charter school sponsors that were school district governing boards, community college districts, or groups of community college districts because those entities are political subdivisions of the state and therefore not "agencies" subject to the APA.[4] *See* A.R.S. §§ 15-101(21) (†), -1401(6) (†), 41-1001(1) (†), -1002(A) (†). Further, both the State Board of Education and the Board of Regents and institutions under its jurisdiction were expressly exempted from the APA's rulemaking requirements "[u]nless otherwise required by law." *See* A.R.S. § 41-1005(D), (F) (†). Thus, as of 2012, the Board was the only charter school sponsor not expressly exempted from the APA's rulemaking requirements, and neither the 2012 nor the 2013 legislation exempted the Board from following the APA or its rulemaking requirements. The underlying statutory provisions providing the exceptions for each of those other sponsors remain essentially in effect, *see* A.R.S. §§ 15-101(23), -1401(7), 41-1001(1), -1002(A), -1005(D),

---

[4]        In 2012, articles one through five of the APA applied "to all agencies and all proceedings not expressly exempted," *see* A.R.S. § 41-1002(A) (†), and this provision remains in effect, *see* A.R.S. § 41-1002(A). Articles two through five of Title 41 ("State Government"), Chapter 6 ("Administrative Procedure"), address APA rulemaking. *See* Art. 2, "Publication of Agency Rules," A.R.S. §§ 41-1011 to -1014; Art. 3, "Rule Making," A.R.S. §§ 41-1021 to -1038; Art. 4, "Attorney General Review of Rule Making," A.R.S. § 41-1041; Art. 4.1, "Administrative Rules Oversight Committee," A.R.S. §§ 41-1046 to -1048; Art. 5, "Governor's Regulatory Review Council," A.R.S. §§ 41-1051 to -1057.

(F), meaning that, at the time this appeal was filed, the Board was the only charter school sponsor not expressly exempted from the rulemaking requirements of the APA.[5]

### IV. The Board's Creation of the Frameworks

**¶8** Following the 2012 legislation, the Board created an Academic Performance Framework and a Financial Performance Framework (the Frameworks at issue).[6] By September 2013, the Board had opened a rulemaking docket, ostensibly to formally codify the Frameworks, or some portion of the Frameworks, as rules. *See* 19 Ariz. Admin. Reg. 2857 (Sept. 20, 2013); A.A.C. R1-1-205.

**¶9** Also in September 2013, Arizona's Auditor General issued a report ("the Auditor General's Report") to the legislature, expressing concern about existing charter school contracts that did not reflect the new requirements and recommending the Board "adopt rules to define board standards for academic, financial, and operational performance" to ensure the Board could exercise appropriate oversight of charter schools based on its performance standards. Ariz. Auditor General's Report No. 13-12, at 20-22, 33 (Sept. 2013).[7] The Board responded that it agreed with the finding of the Auditor General and would implement the recommendation to adopt rules to define Board standards, sufficient progress toward those standards,

---

[5]     The governor recently signed legislation that will exempt the Board from the APA's rulemaking requirements. *See infra* note 14.

[6]     After the Schools filed their complaint, the Board issued new Frameworks on June 13, 2016. The issuance of the new Frameworks does not affect our limited decision.

[7]     The Schools' subsequent complaint referenced the Auditor General's Report; accordingly, that report could be considered in addressing the motion to dismiss. *See Coleman v. City of Mesa*, 230 Ariz. 352, 356, ¶ 9 (2012) (recognizing that public records regarding matters referenced in a complaint are not "outside the pleading," and courts may consider such documents without converting a Rule 12(b)(6) motion into a motion for summary judgment (citing *Strategic Dev. & Constr., Inc. v. 7th & Roosevelt Partners, LLC*, 224 Ariz. 60, 63-64, ¶¶ 10, 13 (App. 2010))).

and consequences for not meeting standards or making progress toward those standards.[8]

¶10 By February 2014, the Board had issued a notice of proposed rulemaking. *See* 20 Ariz. Admin. Reg. 307-23 (Feb. 14, 2014). In the notice, the Board explained it was "amending its rules to implement changes made in 2012 and 2013 to the Arizona Revised Statutes relating to charter schools," and further explained that "[t]hree new Sections added by this rulemaking (R7-5-403, R7-5-404, R7-5-405) establish the Board's academic and financial performance expectations for charter holders as required by A.R.S. § 15-183(R)."[9] 20 Ariz. Admin. Reg. at 308, § 5. The proposed administrative code sections, however, were not finalized as rules.

¶11 Approximately two years later, on January 21, 2016, counsel for the Schools filed a petition under then-A.R.S. § 41-1033(C)[10] with the Governor's Regulatory Review Council ("the Council"), arguing the Board's academic, financial, and operational performance Frameworks should have been adopted as rules under the APA. The Council chose not to hear the petition after the Board informed the Council a rulemaking process had been started to address the issue raised in the petition.

¶12 By April 2016, the Board had opened another rulemaking docket. *See* 22 Ariz. Admin. Reg. 823-24 (Apr. 15, 2016). The notice stated that "the Board intends to place in rule Board guidance regarding performance, financial, and operational standards, measures of sufficient progress, and Board monitoring and oversight of charter holders," and

---

[8]     Contrary to the Schools' representation, we do not read the Auditor General's Report as necessarily advising the Board that it needed to formally adopt the Frameworks as rules.

[9]     Proposed A.A.C. R7-5-403 was entitled and outlined "Academic Performance Expectations," proposed A.A.C. R7-5-404 was entitled and outlined "Demonstrating Sufficient Progress Toward the Board's Academic Performance Expectations," and proposed A.A.C. R7-5-405 was entitled and outlined "Financial Performance Expectations." 20 Ariz. Admin. Reg. at 312-15, § 13.

[10]     In 2017, the legislature amended A.R.S. § 41-1033, adding a new subsection (C), amending former subsection (C), and moving that subsection to subsection (D). *See* 2017 Ariz. Sess. Laws, ch. 138, § 1 (1st Reg. Sess.).

noted that an exemption to Executive Order 2015-01[11] had been obtained from the Governor's Office. 22 Ariz. Admin. Reg. at 824, § 2.

*V.     The Schools' Lawsuit*

**¶13**      Meanwhile, the Schools filed their complaint in superior court on March 22, 2016, seeking declaratory and injunctive relief against the Board. Specifically, the Schools sought a declaration that (1) the Board's academic and financial performance Frameworks are rules under the APA, (2) the Board's failure to adopt the Frameworks in compliance with the APA renders the Frameworks void and unenforceable, and (3) any and all past or future actions taken by the Board in reliance on the Frameworks are also void and without any legal effect or consequence. The Schools also sought to enjoin the Board from using the Frameworks as the basis for any actions regarding charter schools the Board sponsors.

**¶14**      On April 28, 2016, the Board moved to dismiss the complaint pursuant to Rule 12(b)(6), arguing, in part, that the Board did not have to follow the APA because it did not have to promulgate the Frameworks as rules. That motion was briefed in parallel with cross-motions for summary judgment filed by the Schools and the Board, and the court scheduled oral argument for October 14.

**¶15**      On October 7, 2016, the Board asked the court to take judicial notice that the Board had on October 6 filed a new notice of proposed rulemaking related to its April docket opening. *See* 22 Ariz. Admin. Reg. 3057-80 (Oct. 28, 2016). The Board noted that it was seeking to add several proposed administrative rules, which would incorporate elements of the Frameworks.[12]

---

[11]      Executive Order 2015-01 provided in part that state agencies "shall not conduct any rulemaking, whether formal or informal, without the prior written approval of the Office of the Governor."

[12]      The Board specifically directed the court's attention to the following proposed A.A.C. provisions: (1) R7-5-101, providing definitions of the Academic, Financial, and Operational Performance Frameworks; (2) R7-5-401(A), describing the Board's use of the Academic Performance Framework to "assess a charter holder's achievement of the minimum academic performance expectations"; (3) R7-5-402(B), describing the Board's use of the Financial Performance Framework; (4) R7-5-403(B),

**¶16**     At conclusion of oral argument on October 14, the superior court granted the Board's motion to dismiss, ruling from the bench that the APA did not apply to the performance Frameworks described in § 15-183(R) and, consequently, the Board was not required to promulgate its Frameworks as rules.[13]  As a result, the court also found the parties' cross-motions for summary judgment were moot.

**¶17**     In November 2016, the court issued its judgment granting the Board's motion to dismiss.  We have jurisdiction over the Schools' timely appeal pursuant to A.R.S. § 12-2101(A)(1).[14]

---

describing the Board's use of the Operational Performance Framework; and (5) R7-5-404(A), requiring the Board to "revise the academic, financial, and operational performance frameworks as needed," using a notice and comment process.  22 Ariz. Admin. Reg. at 3060-62, 3070-72.

[13]     Although the Board made other arguments in support of its motion to dismiss, those arguments were not addressed by the superior court and are not addressed by this decision.

[14]     After briefing began in this appeal, the Board filed a notice of final rulemaking to complete the 2016 proposed rulemaking and incorporate much of the Frameworks in or through A.A.C. provisions, *see* 23 Ariz. Admin. Reg. 693-721 (Mar. 31, 2017), and the proposed rules have since been incorporated into Arizona's current administrative code, *see* A.A.C. R7-5-101 to R7-5-607 (current through rules published in 23 Ariz. Admin. Reg. Issue 52 (Dec. 29, 2017)).  Also, in 2017, the Arizona Legislature passed legislation that would have amended the APA to exempt the Board from much of the APA's core rulemaking obligations.  *See* S.B. 1036, 53d Leg., 1st Reg. Sess. (Ariz. 2017).  In place of those obligations, the legislation required notice and two opportunities for public comment, and it established a mechanism for any member of the public to file a petition challenging all or part of any policy or rule the Board enacted.  *See id.* at § 2 (adding subsections (G) and (H) to A.R.S. § 41-1005).  The governor vetoed that legislation, however, noting that although he supported exempting the Board from rulemaking, he found the additional requirements of the bill "onerous."  In 2018, the legislature again passed—and the governor signed—legislation amending the APA, this time expressly exempting the Board from the APA's rulemaking obligations without all the additional requirements.  *See* S.B. 1055, 53d Leg., 2nd Reg. Sess. (Ariz. 2018) (adding subsection (G) to A.R.S. § 41-1005).  The 2018 legislation does not have an

**ANALYSIS**

¶18 The Schools argue the superior court erred in determining that, before the 2018 legislation, *see supra* note 14, the Frameworks were not subject to the APA's rulemaking procedures.

     *I.     Standard of Review and Applicable Law*

¶19 We review *de novo* the superior court's dismissal of a complaint under Rule 12(b)(6). *Coleman*, 230 Ariz. at 355, ¶ 7. We also review *de novo* whether an action is a rule within the meaning of the APA and, thus, whether an agency is required to comply with the APA's rulemaking procedures. *Ariz. State Univ. ex rel. Ariz. Bd. of Regents v. Ariz. State Ret. Sys. ("ASU")*, 237 Ariz. 246, 250, ¶ 14 (App. 2015).

¶20 "Dismissal is appropriate under Rule 12(b)(6) only if 'as a matter of law [] plaintiffs would not be entitled to relief under any interpretation of the facts susceptible of proof.'" *Coleman*, 230 Ariz. at 356, ¶ 8 (quoting *Fid. Sec. Life Ins. Co. v. State Dep't of Ins.*, 191 Ariz. 222, 224, ¶ 4 (1998)) (alteration in original). "[C]ourts must assume the truth of all well-pleaded factual allegations and indulge all reasonable inferences from those facts, but mere conclusory statements are insufficient." *Id.* at ¶ 9 (citing *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 7 (2008)).

¶21 The goal of statutory construction is to determine and give effect to legislative intent. *State v. Korzep*, 165 Ariz. 490, 493 (1990). A statute's language is the best indicator of that intent, *Hosp. Corp. of Nw., Inc. v. Ariz. Dep't of Health Servs.*, 195 Ariz. 383, 384, ¶ 4 (App. 1999), and unless the language is ambiguous, its plain meaning governs, *Harris Corp. v. Ariz. Dep't of Revenue*, 233 Ariz. 377, 381, ¶ 13 (App. 2013).

     *II.     The APA's Applicability to the Frameworks*

¶22 As previously recognized, under A.R.S. § 41-1002(A), the APA's rulemaking provisions "apply to all agencies and all proceedings not expressly exempted." *See supra* note 4. The legislature created the Board as a state agency, *see* 1994 Ariz. Sess. Laws, ch. 2, § 2 (9th Spec. Sess.), and with

---

emergency clause, however, meaning it will not take effect until ninety days after the legislature adjourns. *See* Ariz. Const. art. 4, pt. 1, § 1(3). Moreover, because the legislation also does not contain a retroactivity clause, we agree with the parties that the legislation does not moot all issues raised by the Schools' complaint.

regard to the Frameworks, no statute has expressly exempted the Board from the APA's rulemaking provisions—at least until the 2018 legislation takes effect. Accordingly, the APA currently applies to the Board, and if the Frameworks qualify as rules, the Board must follow the APA's rulemaking provisions in promulgating them.[15] *See ASU*, 237 Ariz. at 252, ¶ 24.

**¶23** Under A.R.S. § 41-1001, a "rule" is "an agency statement of general applicability that implements, interprets or prescribes law or policy, or describes the procedure or practice requirements of an agency." A.R.S. § 41-1001(19). Thus, two requirements exist for agency action to qualify as a rule: (1) it must be generally applicable, and (2) it must implement, interpret or prescribe law or policy, or describe the procedure or practice requirements of an agency. *ASU*, 237 Ariz. at 250, ¶ 16.

**¶24** In general, the Frameworks satisfy both requirements. First, the terms of the Frameworks confirm they satisfy the general applicability requirement. *See* A.R.S. § 41-1001(19). Both the Academic and Financial Frameworks expressly apply to all charter holders in the Board's portfolio. In other words, they apply to every charter school to which they could possibly apply, and the Board does not dispute this. Consequently, the Frameworks are "statement[s] of general applicability" that meet the first element of a rule. *See Carondelet Health Servs., Inc. v. Ariz. Health Care Cost Containment Sys. Admin. (AHCCCS)*, 182 Ariz. 221, 227 (App. 1994) ("The first element is met since AHCCCS admits that its methodology is generally applied to all hospitals.").

**¶25** Second, the Frameworks are generally intended to interpret and guide the implementation of state law. *See* A.R.S. § 41-1001(19). The Frameworks expressly implement the Board's statutory directive to measure and evaluate charter schools' performance under A.R.S. § 15-183(I) and (R), and they interpret A.R.S. § 15-183(R), which otherwise leaves much to the Board's discretion. *See ASU*, 237 Ariz. at 251, ¶¶ 18-19; *Sw. Ambulance, Inc. v. Ariz. Dep't of Health Servs.*, 183 Ariz. 258, 261 (App. 1995),

---

[15] That the Board (1) started to follow the APA's rulemaking requirements regarding the Frameworks in 2014 and again in 2016, (2) ultimately incorporated much of the Frameworks into Arizona's current administrative code, and (3) has sought and now obtained an express exemption from the APA's rulemaking requirements suggests the Board never considered itself to be—and was not—exempt from the APA. *See City of Phoenix v. Glenayre Elecs., Inc.*, 242 Ariz. 139, 144-45, ¶¶ 20-21 (2017).

*superseded by statute as stated in ASU*, 237 Ariz. at 251, ¶ 18. The Academic and Financial Frameworks also describe procedure or practice requirements of the Board. Accordingly, the Frameworks generally meet the second element of a rule and qualify as rules, and under the pre-2018 statutory scheme, the Board's promulgation of the Frameworks triggered rulemaking requirements.[16]

### III. The Board's Responsive Arguments

**¶26**        The Board argues the legislature did not intend for charter school sponsors to adopt the Frameworks as rules and therefore, even absent the 2018 legislation, it has not been required to do so.

**¶27**        As support for its argument, the Board notes the legislature knows how to require entities to adopt rules when it wants them to do so, and § 15-183(R)'s plain language establishes that the legislature intended charter school sponsors to adopt performance *frameworks* rather than performance *rules*. Citing *Duke Energy Arlington Valley, LLC v. Arizona Department of Revenue*, 219 Ariz. 76 (App. 2008), the Board argues that when the legislature specifically uses a word or phrase other than "rule" to describe something that it wants an agency to adopt, we should conclude the legislature intended that the agency adopt that something in the form the legislature specified rather than in the form of a rule. *See id.* at 77-79, ¶¶ 6-12.

**¶28**        Contrary to the Board's argument, however, the legislature need not use the word "rule" to invoke the APA's rulemaking requirements. *See ASU*, 237 Ariz. at 249, 252, ¶¶ 6, 22 (holding that a "Policy on Employer Early Termination Incentive Programs" was a rule within the meaning of the APA); *Sw. Ambulance*, 183 Ariz. at 261 (holding that a schedule of rates and charges for ambulance services qualified as a rule); *Carondelet*, 182 Ariz. at 226-28 (holding that a methodology for computing hospital charges was a rule under the APA). Moreover, *Duke Energy* is distinguishable because the tables at issue in that case "function[ed] more like a guideline than a rule" because they did not "implement, interpret or prescribe law or policy," but were tools for economic valuation—something not susceptible of reduction to a rule. 219 Ariz. at 79-80, ¶¶ 13-15. By contrast, the Frameworks at issue here deal with the interpretation of the

---

[16]        The Board's prior rulemaking efforts make clear that promulgating much of the Frameworks through rulemaking is not impracticable, and as the Schools concede, the Board need not promulgate rules covering every aspect of overseeing charter schools.

state's educational standards and the governing of charter school laws in Arizona, i.e., rules.

¶29        Further, the legislature does not have to expressly invoke the rulemaking requirement every time it requires agency action, and this court has previously rejected the argument that one can infer from legislative silence that "the legislature never envisioned the need for an explanatory rule." *Carondelet*, 182 Ariz. at 228; *accord ASU*, 237 Ariz. at 252, ¶¶ 23-25. The question whether the Frameworks are rules turns on what the Frameworks are and do, and with respect to the Board, if the Frameworks are in substance rules—which they generally are—then the APA applies by default, even if the other entities the legislature authorized to serve as charter school sponsors are generally exempt from the APA's rulemaking requirements.[17]

¶30        The Board also argues that the legislature's 2013 amendment to A.R.S. § 15-183(R) requiring charter school sponsors to make their performance frameworks publicly available "on the sponsoring entity's website," would have constituted superfluous legislation if the legislature intended charter school sponsors to promulgate their performance frameworks as rules in accordance with the APA because the APA requires that all final agency rules be made publicly available by being published in the A.A.C. The 2013 legislation is not superfluous, however, because it applies to *all* sponsors, including those exempt from the APA, whose performance frameworks need not be published in the A.A.C. Moreover, requiring the Board to publish the Frameworks in both the A.A.C. and its own website merely provides greater public access to the Frameworks.

¶31        Finally, the Board argues that some aspects of the Frameworks do not meet the APA's definition of a rule, and if we reject its argument that the legislature did not intend to require the Board to promulgate the Frameworks as rules, we should also reject any argument that the Board must promulgate the Frameworks verbatim as rules. The Schools concede the Board was not required to promulgate the Frameworks verbatim as rules, and we agree. The extent to which the Board's final rules satisfy the APA's rulemaking requirements is not a question currently before this court.

---

[17]    We will not infer from the legislature's general exemptions for other sponsors that the legislature intended to specifically exempt the Board with respect to the Frameworks.

*IV.     Attorneys' Fees and Costs*

**¶32**        The Schools request costs and attorneys' fees on appeal.  The Schools filed their complaint pursuant, in part, to A.R.S. § 41-1034(B), and under A.R.S. § 12-348(A)(3), "a court shall award fees and other expenses to any party . . . that prevails by an adjudication on the merits in . . . [a] proceeding pursuant to § 41-1034."  Although we vacate the dismissal in favor of the Board, this case is not over and must be remanded for resolution in the superior court.  Accordingly, we defer any award of fees to the superior court pending resolution of the case.  We award the Schools taxable costs upon compliance with Arizona Rule of Civil Appellate Procedure 21.

## CONCLUSION

**¶33**        Until the 2018 legislation exempting the Board takes effect, the Board is (and has been) subject to the APA's rulemaking requirements, and in general, at least some of the Frameworks qualify as rules subject to rulemaking under the APA.  We therefore vacate the superior court's judgment dismissing the case on the sole basis that the APA does not apply to any of the Frameworks and remand for further proceedings consistent with this decision.  We express no opinion on any other issues—including the parties' cross-motions for summary judgment—on remand.



AMY M. WOOD • Clerk of the Court
FILED:  AA

14