IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

———————————————

A & P RANCH LTD, et al., *Plaintiffs/Appellees,*

*v.*

COCHISE COUNTY, et al., *Defendants/Appellants.*

No. 1 CA-TX 24-0002

FILED 07-17-2025

———————————————

Appeal from the Arizona Tax Court
No. TX2022-000423
The Honorable Erik Thorson, Judge

**AFFIRMED**

———————————————

COUNSEL

Mooney, Wright, Moore & Wilhoit, PLLC, Scottsdale
By Paul J. Mooney, Paul Moore
*Counsel for Plaintiff/Appellee*

Cochise County Attorney's Office, Bisbee
By Paul Correa
*Counsel for Defendant/Appellant Cochise County*

Arizona Attorney General's Office, Phoenix
By Kimberly Cygan
*Counsel for Defendant/Appellant ADOR*

Mohave County Attorney Office, Kingman
By Ryan H. Esplin
*Counsel for Amicus Curiae Mohave County*

---

**OPINION**

Presiding Judge Jennifer M. Perkins delivered the opinion of the Court, in which Judge James B. Morse Jr. and Judge D. Steven Williams joined.

---

**P E R K I N S**, Judge:

¶1        Cochise County (the "County") and the Arizona Department of Revenue ("ADOR") appeal the tax court's grant of summary judgment in favor of 16 orchard and vineyard owners (the "Taxpayers") who brought a statutory property tax appeal to challenge the County's valuation of their properties. We hold that Arizona's agricultural property taxation scheme requires "permanent crops"—perennial crop-producing plants like trees and vines—to be valued with their land using the income approach mandated by Arizona Revised Statutes Section 42-13101. We therefore affirm the tax court's grant of summary judgment.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        Arizona's property tax valuation statutes task ADOR with "prescrib[ing] guidelines for applying standard appraisal methods and techniques that shall be used by . . . county assessors in determining the valuation of property." A.R.S. § 42-11054(A)(1). ADOR publishes its guidelines for valuing agricultural property in a document it calls the Agricultural Property Manual (the "Manual").

¶3        The Manual defines perennial plants like nut trees and grapevines as "permanent crops." It instructs county assessors to treat permanent crops as improvements to the land and value them separately from the land on which they are grown. To assist the county assessors in this endeavor, the Manual contains a table of crop values for common types of permanent crops grown in Arizona. Under the Manual's approach, a county assessor determines the value of an orchard or vineyard by adding the value of the permanent crops to the value of the underlying land. The Manual has prescribed this practice since at least September 1983, and county assessors across Arizona have been following the Manual's procedures for at least that long.

¶4        For decades, ADOR's crop value tables in the Manual remained unchanged. In 2020, ADOR removed the crop value table from

that year's edition of the Manual. Instead, it gave assessors discretion to determine permanent crop values based on market data in their jurisdictions; if data were insufficient, the assessors could continue to use the old crop value tables.

¶5 ADOR updated the Manual in 2022. The 2022 Manual no longer allowed assessors to use the old crop value tables — it instructed only that "[a]ssessors should use their discretion in determining permanent crop values that are reflective of the market in their jurisdictions."

¶6 For the 2023 tax year, the County followed the updated Manual's directives in reappraising the agricultural properties in its jurisdiction. The County's market value approach to appraising permanent crops resulted in an average 2,000 percent increase in orchard values and an average 8,000 percent increase in vineyard values. This did not cause an immediate spike in actual taxes assessed; rather, it will result in sustained annual increases of five percent per year. *See infra* ¶ 11.

¶7 The Taxpayers sued the County, asserting its valuation contradicted the statutory scheme for taxing agricultural property. ADOR intervened to defend its Manual's interpretation of the statutory scheme. The parties filed cross-motions for summary judgment. The tax court granted summary judgment in the Taxpayers' favor, concluding that the Manual's practice of valuing permanent crops separately from the underlying land contradicted the statutory scheme.

¶8 ADOR and the County (collectively, the "State") timely appealed and we have jurisdiction. A.R.S. §§ 12-120.21(A)(1) and -170(C).

## DISCUSSION

¶9 We review the tax court's grant of summary judgment *de novo*. *Duke Energy Arlington Valley, LLC v. Ariz. Dep't of Revenue*, 219 Ariz. 76, 77, ¶ 4 (App. 2008). We review issues of statutory interpretation *de novo*. *Walls v. Ariz. Dep't of Pub. Safety*, 170 Ariz. 591, 594 (App. 1991). "When construing a tax statute, we give words their plain and ordinary meaning." *SWAT Training Facilities LLC v. Ariz. Dep't of Revenue*, 251 Ariz. 269, 273, ¶ 8 (App. 2021). "[S]uch words will be read to gain their fair meaning, but not to gather new objects of taxation by strained construction or implication." *Ariz. State Tax Comm'n v. Staggs Realty Corp.*, 85 Ariz. 294, 297 (1959). We interpret tax statutes strictly against the state and resolve any ambiguities in favor of the taxpayer. *Wilderness World, Inc. v. Dep't of Revenue*, 182 Ariz. 196, 199 (1995).

## I.    General taxation principles and background

¶10    Real property in Arizona is taxed in proportion to its value. County assessors calculate the annual tax for a particular property by first determining the property's "full cash value." *See Qasimyar v. Maricopa Cnty.*, 250 Ariz. 580, 584, ¶ 8 (App. 2021). The legislature has created statutory valuation methods for determining the full cash value of some types of property, but "[i]f a statutory method is not prescribed, full cash value is synonymous with market value." A.R.S. § 42-11001(6).

¶11    "Full cash value is the basis for assessing, fixing, determining and levying primary and secondary property taxes," *id.*, but the actual tax due on a property is calculated by applying a percentage to a property's "limited property value," *id.* at (7). Generally, limited property value is "the limited property value of the property in the preceding valuation year plus five per cent of that value," A.R.S. § 42-13301(A), and may not exceed the property's full cash value, *id.* at (B). Thus, in the first valuation year, a property's limited property value will equal its full cash value. Limited property value will continue to equal full cash value so long as the full cash value increases no more than five percent over the course of the valuation year. But if full cash value increases more than five percent in a particular year, limited property value caps the increase in the property's taxable value to five percent. This five percent per year increase cap insulates Arizona taxpayers from drastic increases in their tax bills that might result from changes in the market. *Premiere RV & Mini Storage LLC v. Maricopa Cnty.*, 222 Ariz. 440, 442, ¶ 4 (App. 2009).

¶12    The percentage applied to a property's limited property value to derive its tax liability depends on the property's classification. A.R.S. §§ 42-15001 to -15009. Real property and improvements used for agricultural purposes are "Class two (R)" property. A.R.S. § 42-12002(1). Class two (R) property is "valued at full cash value or pursuant to [Section 42-13101 *et seq.*], as applicable," A.R.S. § 42-12002(1)(a), and is taxed at 15 percent of its limited property value, A.R.S. § 42-15002(1).

¶13    Section 42-13101 (the "Valuation Method Statute") states: "Land that is used for agricultural purposes shall be valued using only the income approach to value without any allowance for urban or market influences." A.R.S. § 42-13101(A). The value of a property under the income approach is the average annual net cash rental of comparable, nearby agricultural land, A.R.S. § 42-13101(B)(1), multiplied by a capitalization rate that is indexed to interest rates for farm credit services loans. A.R.S. § 42-13101(B)(2). Contrary to the State's position at oral argument, subsection

(A) of the Valuation Method Statute does not "stand alone" such that it "operates correctly" without reference to subsection (B). Subsection (B) explains how to execute the income approach required by Subsection (A).

¶14 The parties dispute the scope of the Valuation Method Statute. The State argues the Valuation Method Statute refers only to land, and not to any improvements thereon. It acknowledges it must use the income approach to value raw land, but asserts that because there is no statutory method for valuing improvements on agricultural land, such improvements must be valued at market value using standard appraisal methods and techniques. *See* A.R.S. § 42-11001(6) ("If a statutory method is not prescribed, full cash value is synonymous with market value."). Because the State considers permanent crops to be improvements, it argues its practice of valuing permanent crops at market value, separately from the land, is consistent with the Valuation Method Statute.

¶15 The Taxpayers disagree. They argue the word "land" in the Valuation Method Statute encompasses both land and crop-producing improvements, and thus the Valuation Method Statute does not permit the State's practice of valuing permanent crops separately from the land. Put differently, they argue the Valuation Method Statute provides the exclusive method for valuing all agricultural property.

¶16 Distilled to its essence, this appeal requires us to decide the meaning of the word "land" in the Valuation Method Statute.

## II.    The Definition Statute

¶17 We begin with Section 42-12151 (the "Definition Statute"), which defines the term "agricultural real property" to include 12 different categories of land and improvements used to grow, raise, or process plants, animals, or their byproducts. A.R.S. § 42-12151. Subsection 1 of the Definition Statute provides that "[c]ropland in the aggregate of at least twenty gross acres" is agricultural real property. A.R.S. § 42-12151(1). Subsection 2 (the "Permanent Crop Definition") provides that "[a]n aggregate ten or more gross acres of permanent crops" is agricultural real property. A.R.S. § 42-12151(2).

¶18 The State argues the Definition Statute classifies "cropland" and "permanent crops" as distinct types of agricultural real property subject to different valuations. It supports this argument by suggesting that the absence of the word "land" in the Permanent Crop Definition demonstrates the legislature's intent to treat permanent crops as improvements that must be valued separately from the land. But the

Definition Statute is not a classification system. It is a definition that lists categories of real property that fit under the term "agricultural real property." It does not prescribe different valuation methods for those categories. *See Hibbs v. Chandler Ginning Co.*, 164 Ariz. 11, 17 (App. 1990) (predecessor to the Definition Statute "does not change the classification for agricultural property but instead defines such property").

¶19        The Definition Statute purports to define the term "agricultural real property" for use across all of Title 42, Chapter 12, Article 4 (the "Agricultural Property Classification Article"), but that precise combination of words appears nowhere else in the article. Instead, each section employs a different, but related, term. *See, e.g.,* A.R.S. § 42-12152(A)(1) ("agricultural land"); A.R.S. § 42-12153(B) ("property . . . classified as being used for agricultural purposes"); A.R.S. § 42-12154(A)(1) ("agricultural classification of property"); A.R.S. § 42-12155(A) (same); A.R.S. § 42-12156 ("agricultural property"); A.R.S. § 42-12158(1) ("property classified as being used for agricultural purposes"); A.R.S. § 42-12159(A) ("real property").

¶20        We ordinarily presume that different terms denote different ideas. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 170 (2012). But that presumption "assumes a perfection of drafting that, as an empirical matter, is not often achieved." *Id.* And because every section of the Agricultural Property Classification Article uses a different term, employing such a presumption here would render the article unreadable. Such a reading would also render the Definition Statute superfluous—it would define a term that carries no meaning within the body of law to which it applies. And "when interpreting statutes, we must ensure not to render superfluous any of their provisions." *Shifflette v. Marner*, 255 Ariz. 538, 542, ¶ 17 (App. 2023).

¶21        Instead, because the Definition Statute "is part of a broader statutory scheme concerning a single subject," we must construe it "in conjunction with related statutes, giving effect to each provision." *Di Giacinto v. Ariz. State Ret. Sys.*, 242 Ariz. 283, 286, ¶ 8 (App. 2017). In doing so, "[w]e seek to harmonize statutory provisions." *Pima Cnty. v. State*, 258 Ariz. 11, 17, ¶ 28 (2024) (quoting *Lagerman v. Ariz. State Ret. Sys.*, 248 Ariz. 504, 511, ¶ 35 (2020)). We can only read the Agricultural Property Classification Article in harmony with itself if we apply the Definition Statute's definition of "agricultural real property" to all the similar terms within the article.

### III. The Classification Eligibility Statute

**¶22** The statute immediately following the Definition Statute is Section 42-12152 (the "Classification Eligibility Statute"), which provides: "Property is not eligible for classification as property used for agricultural purposes unless . . . [t]he primary use of the property is as agricultural land and the property has been in active production . . . for at least three of the last five years." A.R.S. § 42-12152(A)(1).

**¶23** Reading the Classification Eligibility Statute in harmony with the Definition Statute, we conclude that the terms "property" and "agricultural land" in the Classification Eligibility Statute refer to "agricultural real property" as defined in the Definition Statute. Thus, a property consisting of ten or more gross acres of permanent crops becomes eligible for classification as property used for agricultural purposes if it has been used primarily for active agricultural production for at least three of the last five years.

### IV. The Valuation Method Statute

**¶24** We return now to the Valuation Method Statute: "Land that is used for agricultural purposes shall be valued using only the income approach to value without any allowance for urban or market influences." A.R.S. § 42-13101(A).

**¶25** Originally, the agricultural taxation statutes did not define the phrase "land that is used for agricultural purposes" as used in the Valuation Method Statute. *Title USA v. Maricopa Cnty.*, 174 Ariz. 534, 536 (Tax 1993). After several appellate decisions "wrestled with such a definition," the legislature enacted the Classification Eligibility Statute (then numbered A.R.S. § 42-167) to explain the circumstances in which land may be considered "used for agricultural purposes." *Id.*

**¶26** But the Classification Eligibility Statute does not use the phrase "land that is used for agricultural purposes." Instead, it refers to "*property* used for agricultural purposes." A.R.S. § 42-12152(A) (emphasis added). We once again strive to read imperfect drafting in harmony—if the Classification Eligibility Statute exists to clarify the Valuation Method Statute's phrase "land that is used for agricultural purposes," it must follow that the word "land" in the Valuation Method Statute means the same thing as "property" in the Classification Eligibility Statute.

**¶27** We concluded above that the word "property" in the Classification Eligibility Statute refers to "agricultural real property" as

defined in the Definition Statute. *Supra* ¶ 23. If (1) the word "land" in the Valuation Method Statute means the same thing as "property" in the Classification Eligibility Statute, and (2) the word "property" in the Classification Eligibility Statute means the same thing as "agricultural real property" in the Definition Statute, then (3) the word "land" in the Valuation Method Statute must refer to "agricultural real property" as defined in the Definition Statute.

¶28        Therefore, ten or more gross acres of permanent crops (which includes both the crops and the underlying land), if used primarily for active agricultural production for at least three of the last five years, is land that is used for agricultural purposes. And according to the Valuation Method Statute, "[l]and that is used for agricultural purposes shall be valued using *only* the income approach to value without any allowance for urban or market influences." A.R.S. § 42-13101(A) (emphasis added).

¶29        This means orchards and vineyards must be valued as a whole—that is, as units inclusive of both the plants and the land—according to the income approach prescribed in the Valuation Method Statute. The State's practice of valuing trees and vines separately from the underlying land thus contradicts the statutory scheme.

¶30        ADOR argues its Manual has prescribed this practice for decades and notes that the legislature has never directed a different approach. And the County urges us to treat the Manual as persuasive authority. But "while courts may consider an agency's interpretation of a statute it is authorized to implement, the agency's interpretation is not binding legal authority and cannot be inconsistent with statutory provisions." *Maricopa Cnty. v. Viola*, 251 Ariz. 276, 279, ¶ 11 (App. 2021); *see also* A.R.S. § 42-2080(G) ("The court shall decide all questions of law without deference to any determination that is made by the department [of revenue]."). Because the Manual's procedure contradicts the statutory scheme, we owe it no deference. "Nor do we presume, as the State suggests, that the legislature is aware of all of the regulations adopted by the numerous state regulatory agencies and tacitly approves them if it does not take contrary action." *Roberts v. State*, 253 Ariz. 259, 270, ¶ 42 (2022). Legislative silence is not always legislative approval. *See State ex rel. Brnovich v. Ariz. Bd. of Regents*, 250 Ariz. 127, 133, ¶ 21 (2020).

¶31        The State also argues that applying the income approach to both land and permanent crops effectively exempts the permanent crops from taxation, thus violating the Exemptions Clause of the Arizona Constitution. *See* Ariz. Const. art. IX, § 2 ("All property in this state that is

not exempt under the laws of the United States or under this section is subject to taxation as provided by law."). Not so. The Definition Statute groups land and permanent crops together under the term "agricultural real property." Agricultural real property is valued under the Valuation Method Statute and qualifies as Class two (R) property under Section 42-12002(1). Class two (R) property is taxed at 15 percent of its limited property value. A.R.S. § 42-15002(1). Thus, permanent crops do not escape taxation — they are taxed with their land as part of a unit of agricultural real property.

¶32        Finally, the State cites cases from other jurisdictions for the proposition that permanent crops are valuable improvements to land. *See N. E. Fruit Council v. State Bd. of Equalization & Assessment*, 475 N.Y.S.2d 1010, 1012 (N.Y. App. Div. 1984); *Fredell v. Ormand Mining Co.*, 97 S.E. 386, 387 (N.C. 1918); *Hill v. Coal Valley Mining Co.*, 103 Ill. App. 41, 44 (Ill. App. Ct. 1902); *Borton & Sons, Inc. v. Burbank Props., LLC*, 471 P.3d 871, 880, ¶ 51 (Wash. 2020) (Madsen, J., concurring); *Haines City Citrus Growers' Ass'n v. Petteway*, 145 So. 183, 184 (Fla. 1932); *Wasco Real Props. I, LLC v. Comm'r*, 112 T.C.M. (CCH) 640 (T.C. 2016); *Kimmelman v. Comm'r*, 72 T.C. 294, 308 (T.C. 1979). Those cases address an issue we do not reach, because we do not hold that permanent crops are not improvements. Whether permanent crops are improvements or not, the Valuation Method Statute requires them to be valued together with their land under the income approach.

¶33        We affirm the tax court's grant of summary judgment and its interpretation of the Valuation Method Statute.

## V.        The tax court's award of fees against the County

¶34        The County separately argues the tax court erred in awarding the Taxpayers fees against the County. We review fee awards for an abuse of discretion. *Nordstrom, Inc. v. Maricopa Cnty.*, 207 Ariz. 553, 560, ¶ 29 (App. 2004).

¶35        The County asserts it should not be subject to fee liability because it merely followed ADOR's guidance and had no discretion to disregard the Manual. But it did more than merely follow ADOR's guidance — it took an active role in defending ADOR's prescribed valuation methods before the tax court, and continued to do so on appeal.

¶36        "[A tax] court may award fees and other expenses to any party, other than this state or a city, town or county, that prevails by an adjudication on the merits in an action brought by the party . . . challenging . . . [t]he assessment, collection or refund of taxes." A.R.S. § 12-348(B)(1). Nothing in Section 12-348 requires a tax court to determine a governmental

entity's relative fault in an unlawful assessment of taxes. The tax court simply has discretion to award fees to a private party who prevails in a tax challenge against the state or a city, town, or county. The Taxpayers here prevailed in such a challenge; thus, the tax court did not abuse its discretion in awarding fees against the County.

## ATTORNEY FEES

**¶37**        The Taxpayers request fees and costs under Section 12-348(B). Because they prevail in an appeal of a tax challenge, we award them their reasonable fees and costs incurred on appeal upon compliance with ARCAP 21.

## CONCLUSION

**¶38**        We affirm.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:            JR